IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

EAST WEST, LLC d/b/a          )
CARIBBEAN CRESCENT,           )
                             )
     Plaintiff,               )
                             )
          v.                  )    1:11cv1380 (JCC/TCB)
                             )
SHAH RAHMAN, et al.,          )
                             )
     Defendants.              )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Shah
Rahman ("Rahman") and Caribbean Crescent, Inc.'s ("CCI")
(collectively, "Defendants") Motion to Dismiss [Dkt. 60] (the
"Motion").  For the following reasons, the Court will grant in
part and deny in part Defendants' Motion.

### I. Background

This case arises out of a business dispute involving
alleged acts of trademark and trade name infringement and breach
of contract.

#### A.   Factual Background

Plaintiff East West, LLC ("East West") sells food
products including Jamaican and south Asian spices and halal
meat and fish in the Washington, D.C. metropolitan area and
surrounding communities.  (Second Amended Complaint ("SAC")

[Dkt. 59] ¶ 2.)  On June 11, 2003, East West and Third Party Defendants Naeem Zai and Mohammad Sadiq, who are East West's President and Vice President, respectively, (collectively, the "Buyers") entered into an "Agreement for Sale of Inventory/Assets" (the "Sale Agreement") with Defendants in which they agreed to purchase the business assets known as Caribbean Crescent.  (SAC ¶ 13; Ex. A ("Sale Agreement") at 1.) Defendants agreed to deliver to the Buyers all rights, title, and interest in the business assets known as Caribbean Crescent including the common law trademark CARIBBEAN CRESCENT ("the CARIBBEAN CRESCENT Mark" or "the Mark") and the trade name Caribbean Crescent.  (SAC ¶¶ 17-18, 21; Sale Agreement § 1.)[1]

The Sale Agreement contained a non-compete provision (the "Non-Compete Agreement"), in which Defendants agreed not to compete with the business being sold to the Buyers for a period of five years and within a five mile radius of the Washington Metropolitan Area.[2]  (Sale Agreement § 21.)  Defendants were entitled to "use [the] Carribean Crescent [as opposed to Caribbean Crescent] trade name," and to "continue [to] trade and market products and services as Carribean Crescent [as opposed

---

[1] On December 20, 2011, Zai and Sadiq assigned their rights to the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark, including the good will and the right to sue for infringement to East West.  (SAC ¶ 90; Ex. S.)
[2] Under the Sales Agreement, the Washington Metropolitan Area was defined to be consistent with the "U.S. Department of Labor publication defining Standard Metropolitan Area or its successor government publication."  (Sale Agreement § 21.)

to Caribbean Crescent] outside the Washington Metropolitan Area." (*Id.*)

On June 17, 2003, the parties closed on the Sale Agreement. (SAC ¶ 34.) The Buyers purchased the business assets known as Caribbean Crescent as well as Defendants' remaining inventory of goods. (SAC ¶¶ 31, 36.) The Buyers paid $225,918 and executed a promissory note in the amount of $215,918 in furtherance of the Sale Agreement. (SAC ¶ 40; Settlement Agreement.) The Buyers satisfied the amount due under the promissory note over a period of approximately two and a half years. (SAC ¶ 47.)

The parties executed an Articles of Sale and Transfer, also on June 17, 2003, in which CCI transferred all of the assets of Caribbean Crescent, including the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark to East West. (SAC ¶ 44; Ex. D.) That same day, the parties entered into a Financing Statement in which CCI was the Secured Party and Buyers were the Debtor, and which covered all "Goodwill, the tradename 'CARIBBEAN CRESCENT' [sic] and all derivatives thereof; customer lists; and telephone numbers." (SAC ¶ 45; Ex. E.) The Buyers thereupon began using the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark, and East West began doing business as Caribbean Crescent. (SAC ¶¶ 48-50.)

On February 23, 2004, East West and CCI entered into a Commission Agreement, which provided that East West would handle all sales of Defendants' Jamaican patties product in the Washington Metro Area.  (SAC ¶¶ 55-56; Ex. I.)  East West was entitled to a twenty percent commission for such sales.  (*Id.*)  The Commission Agreement also established a five percent commission to be paid by East West to CCI for all sales of East West's products made by Rahman.  (SAC ¶ 57.)  East West alleges that Defendants have never paid any commissions on any of the sales made pursuant to the Commission Agreement.  (SAC ¶ 59.)

Defendants allegedly violated the Non-Compete Agreement and the sale and assignment of the trade name Caribbean Crescent by competing against East West and using the trade name Caribbean Crescent within a five-mile radius of the Washington Metro Area "sometime between June 17, 2003 and June 16, 2008."  (SAC ¶¶ 60, 62.)  Defendants also allegedly began using the CARIBBEAN CRESCENT Mark "sometime shortly after" the sale and assignment of the Mark to East West.  (SAC ¶ 64.)  East West alleges, on information and belief, that a number of the products sold by Defendants under the trade name Caribbean Crescent and bearing the CARIBBEAN CRESCENT Mark were first introduced into the market in June or July of 2011.  (SAC ¶¶ 61, 63.)

On or about February 20, 2008, Defendants allegedly filed a trademark application with the United States Patent and Trademark Office for the CARIBBEAN CRESCENT Mark, despite having sold and assigned the Mark to East West over four years earlier. (SAC ¶¶ 65-66.)  Defendants allegedly made various fraudulent statements regarding their purported ownership and use of the CARIBBEAN CRESCENT Mark in filing and prosecuting the trademark application.  (SAC ¶¶ 66-70.)  The PTO ultimately accepted the trademark application and registered the CARIBBEAN CRESCENT Mark.  (SAC ¶ 79.)

On or about October 30, 2008, Rahman sent a facsimile to East West claiming ownership of the CARIBBEAN CRESCENT Mark. (SAC ¶ 71.)  Rahman sent two subsequent facsimiles to East West in which he expressed a desire to clear up their misunderstandings.  (SAC ¶¶ 72-73; Exs. N, O.)  On December 15, 2008, East West sent a letter by counsel to Rahman asserting that it had purchased all of CCI's assets, including the trade name Caribbean Crescent.  (SAC ¶ 74; Ex. P.)

In January 2009, Rahman advised Zai that Rahman's father, who was terminally ill with cancer, wished to meet with him to help resolve the problems between the parties.  (SAC ¶ 75.)  In February 2009, Sadiq and Zai visited Rahman's father. (SAC ¶ 77.)  Rahman was also present.  (*Id.*)  At that time, Rahman's father allegedly stated that Rahman had not honored the

5

agreements between the parties but that he would from that point on.  (*Id.*)  Rahman himself allegedly agreed to honor the parties' agreements as well.  (*Id.*)

In February or March of 2011, Defendants hired a former employee of East West named Ishmael Amin.  (SAC ¶ 82.)  According to East West, Amin had knowledge of its customers, its business methods, and "other 'company sensitive' information."  (*Id.*)  Much of this information was valuable, not known outside of its business, was protected, and would be difficult, if not impossible, for Defendants to acquire or duplicate.  (SAC ¶ 83.)  Defendants have allegedly obtained proprietary information and knowledge of East West's business relationships through Amin.  (SAC ¶¶ 85, 88.)  East West alleges that Defendants have begun to interfere with East West's business relationships and to use its proprietary information.  (SAC ¶¶ 86-87.)

In June or July of 2011, Rahman approached Zai and Sadiq with new products displaying the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark and asked if East West would sell those products in the Washington Metropolitan Area.  (SAC ¶ 80.)  When Zai and Sadiq refused, Rahman informed them that he would proceed to sell the products using a different distributor.  (*Id.*)  East West asserts that this was the point in time at which it "lost all hope" that Defendants would honor

the parties' agreements despite the assurances previously made by Rahman.  (*Id.*)

B.   Procedural History

On May 9, 2012, Plaintiff filed its Second Amended Complaint (the "Complaint").[3]  [Dkt. 59.]  The Complaint contains thirteen causes of action: (1) federal trademark infringement, false designation of origin, and false representations in commerce under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) common law trademark infringement; (3) federal unfair competition, passing off, false advertising, trade name infringement and/or false designation of origin under 15 U.S.C. § 1125(a); (4) common law unfair competition and trade name infringement; (5) violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, *et seq.*; (6) violation of the Virginia Criminal Code, Va. Code § 18.2-216, *et seq.*; (7) breach of contract; (8) unjust enrichment; (9) conversion; (10) cancellation of registration; (11) for permanent injunctive relief; (12) tortious interference with business relationship/intentional interference with economic advantage; and (13) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336, *et seq.*

---

[3] The complete procedural history of this case is outlined in the Court's Memorandum Opinion dated May 15, 2012.  (*See* Mem. Op. [Dkt. 63] at 1-4.)

On May 10, 2012, Defendants filed a Motion to Dismiss certain claims in the Complaint.  [Dkt. 60.]  Plaintiff filed its opposition on May 24, 2012 [Dkt. 65], to which Defendants replied on May 30, 2012 [Dkt. 66].

Defendants' Motion is before the Court.

## II.  Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion tests the legal sufficiency of the complaint.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A court reviewing a complaint on a 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff.  *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).  To survive a 12(b)(6) motion, "a complaint

8

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III. Analysis

Defendants argue that the following claims are subject to dismissal:  (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) violation of the Virginia Consumer Protection Act; (5) violation of the Virginia Criminal Code; (6) tortious interference with business expectancy; and (7) misappropriation of trade secrets.  The Court will examine each claim in turn.

A.   Breach of Contract

East West's breach of contract claim is based on Defendants' alleged failure to pay commissions in accordance with the Commission Agreement.  Defendants argue that the claim is barred by the statute of limitations.  Their argument raises several issues, including what law governs the statute of limitations and whether it is clear from the pleadings when East West's breach of contract claim accrued.

### 1.   Choice of Law

The Court begins with the threshold choice of law issue.  As a federal court exercising supplemental jurisdiction, the Court applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  In Virginia, the statute of limitations is a procedural issue governed by Virginia law.  *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 753 F. Supp. 2d 597, 602 (E.D. Va. 2010).  Pursuant to Virginia Code § 8.01-246(2), the limitations period for breach of contract claims based on a written contract is five years.  Va. Code § 8.01-246(2).  However, Virginia has also enacted a borrowing statute which "limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's."  *Hansen v. Stanley Martin Cos., Inc.*, 266 Va. 345, 352 (Va. 2003) (citing Va. Code § 8.01-247).  "For purposes of the borrowing statute, '[t]he law

10

governing a contract is the law relating to the validity and interpretation of the contract itself, rather than the law regarding performance and breach." *Hunter Innovations*, 753 F. Supp. 2d at 602 (citing *Fiberlink Commc'ns Corp. v. Magarity*, 24 F. App'x 178, 2001 WL 1658914, at *3 (4th Cir. Oct. 16, 2001)). Thus, whether East West's breach of contract claim is subject to the limitations period of Virginia or the more restrictive limitations period of another state depends on what law governs the contract.

In Virginia, it is well established that the nature, validity, and interpretation of a contract is governed by the "law of the place where made." *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (Va. 1996) (citations omitted). A contract is made "when the last act to complete it is performed." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005). However, when "a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract." *Hunter Innovations*, 753 F. Supp. 2d at 603 (*citing Erie Ins. Exch. v. Shapiro*, 248 Va. 638, 640 (Va. 1994)). Importantly, an exception exists when the contract is to be performed more or less equally among two or more states, in which case the law of the state in which the contract was made should apply. *See Roberts v. Aetna Casualty & Sur. Co.*, 687 F. Supp. 239, 241

11

(W.D. Va. 1988); *see also Black v. Powers*, 48 Va. App. 113, 132-33 (Va. Ct. App. 2006) (applying the law of the Virgin Islands, where the contract was made and partially performed).

Defendants argue that the District of Columbia's three-year limitations period applies to East West's breach of contract claim. *See* D.C. Code § 12-301(7). Specifically, they contend that District of Columbia law governs the Commission Agreement because the contract was to be performed there. In support of their position, Defendants point to a provision of the contract, which states that "[a]ll sales in the Washington Metro Area (for Caribbean Crescent, Inc. Jamaican Patties) will be handled through East West LLC DBA Caribbean Crescent" and that "[a] 20% commission of the net profit will be paid for all handling/storage, delivery, and sales for the Jamaican Patties." (SAC Ex. I.) Defendants argue that this provision, coupled with the fact that East West's principal place of business is located in Washington, D.C., demonstrates that Washington, D.C. is the place of performance. However, the Washington Metro Area includes counties in Virginia, Maryland, and West Virginia. *See* Dep't of Labor, May 2011 Metropolitan and Nonmetropolitan Area Definitions, *available at* http://www.bls.gov/oes/current/msa_def.htm. Thus, contrary to Defendant's assertion, the Commission Agreement was not to be performed exclusively in Washington, D.C. Because the contract was to be performed in

12

multiple states (and there is no reason to believe that one predominated over the others), the choice-of-law analysis reverts back to the place where the contract was made.  East West argues that the Commission Agreement was made in Virginia -- a contention that Defendants do not contest and therefore concede.  *See Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08cv918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (recognizing the general principle that "a party who fails to address an issue has conceded the issue") (collecting cases).  Accordingly, the Virginia statute of limitations applies to East West's breach of contract claim.

## 2.  Accrual Date

The next relevant inquiry is whether it is clear from the pleadings when East West's breach of contract claim accrued.  Defendants argue that the claim accrued in February 2004.  They point to a letter from East West's former counsel to Rahman, which is attached as an exhibit to the Complaint.  The letter reads, in pertinent part:

> This is [] to notify you [Defendant] that we
> [Plaintiff] are aware of certain sales which
> you made during the five year period between
> June 11, 2003 and June 11, 2008, in the
> Washington, D.C. Metropolitan Area in
> violation . . . of your Commission Agreement
> dated February 22, 2004. . . . We estimate
> that [Defendant] has had sales of
> approximately $1 million per year in the
> Washington D.C. Metropolitan Area since
> February of 2004.  Under the Commission

>            Agreement my clients should have been paid 5%
>            of those sales, or approximately $50,000.

(SAC Ex. P.)

        This letter, however, appears to be based on a

misinterpretation of the parties' contractual obligations.[4]

Specifically, the letter estimates sales made by *Defendants* over

a certain period of time, on which it claims East West should

have been paid a five percent commission.   But pursuant to the

Commission Agreement, East West was entitled to a *twenty percent*

*commission* on sales of Defendants' Jamaican Patties product

*handled by East West*.[5]   The letter does not specifically identify

these sales and mixes up the commission percentage to which East

West is entitled.   Thus, viewing the pleadings in a light most

favorable to Plaintiff, it is not clear when exactly East West's

breach of contract claim accrued.[6]   *See Touchcom, Inc. v.*

*Berreskin & Parr*, No. 07cv0114, 2010 WL 582173, at *6 (E.D. Va.

Feb. 12, 2010) (declining to "dismiss a complaint based on the

affirmative defense of the statute of limitations where all the

---

[4] East West argues that the February 2004 date should not be considered
because it appears in an exhibit rather than the body of the Complaint.  This
argument is without merit.  In deciding a Rule 12(b)(6) motion, "a court
evaluates the complaint in its entirety as well as documents attached to or
incorporated into the complaint." *E.I. DuPont de Nemours & Co. v. Kolon*
*Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  Moreover, "[i]n the event
of conflict between the bare allegations of the complaint and any attached
exhibit, the exhibit prevails." *United States ex rel. Constructors, Inc. v.*
*Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing *Fayetteville*
*Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).
[5] Under the Commission Agreement, it was Defendants who were entitled to a
five percent commission on sales they made for East West.
[6] As such, the Court need not resolve East West's arguments that Defendants
are equitably estopped from raising a statute of limitations defense and that
Defendants committed a series of breaches, each with an independent
limitations period.

14

facts necessary to do so do not 'clearly appear' on its face").

Accordingly, East West's breach of contract claim survives

Defendants' Motion to Dismiss.[7]

      B.   <u>Unjust Enrichment</u>

      East West's unjust enrichment claim is based on

Defendants' registration of the CARIBBEAN CRESCENT Mark after

having sold all rights in the Mark to the Buyers.  Defendants

argue that East West's unjust enrichment claim is time-barred.[8]

      In Virginia, the statute of limitations for an unjust

enrichment claim is three years.[9]  *Belcher v. Kirkwood*, 238 Va.

430, 433 (Va. 1989); *see also RMS Tech., Inc. v. TDY Indus.,

Inc.*, 64 F. App'x 853, 858 (4th Cir. 2003); *Tao of Sys.

Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F.

Supp. 2d 565, 576 (E.D. Va. 2004).  "The statute of limitations

for unjust enrichment begins to run at the time the unjust

---

[7] At oral argument, Defendants represented that an expert report produced during discovery makes clear that East West is seeking damages on its breach of contract claim for conduct which dates back to 2004.  Of course, the Court may not consider such evidence in ruling on a Rule 12(b)(6) motion.

[8] Defendants also argue that East West's unjust enrichment claim should be dismissed because it is premised on the existence of an express contract and because East West fails to allege that it conferred a benefit on Defendants. Given the Court's conclusion that the claim is untimely, the Court need not address these arguments.

[9] The parties fail to address the relevance, if any, of a choice of law clause in the Sale Agreement which provides that the "Agreement shall be construed and enforced in accordance with the laws of the District of Columbia." (*See* Sale Agreement § 29.)  Assuming *arguendo* this clause is relevant, it would not affect the Court's analysis.  As noted above, the statute of limitations is a procedural issue governed by Virginia law.  *Hunter Innovations*, 753 F. Supp. 2d at 602.  And, Virginia's borrowing statute would not apply because the limitations period for unjust enrichment claims in the District of Columbia is the same as in Virginia -- three years.  *Vila v. Inter-Am. Investment, Corp.*, 570 F.3d 274, 283 (D.C. Cir. 2009) (citing *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1221 (D.C. 2005)).

enrichment occurred . . . not when a party 'knew or should have known' of the unjust enrichment." *Tao*, 299 F. Supp. 2d at 576.

The Court rejects East West's argument that a five-year limitations period applies to its unjust enrichment claim. In *Belcher*, the Virginia Supreme Court held that a claim for unjust enrichment was barred by the three-year limitations period applicable to oral contracts. 238 Va. at 433. In so holding, the court reasoned that "in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Id*. From this, East West contends that the five-year limitations period applicable to written contracts applies to its unjust enrichment claim because the claim relates to the existence of a written contract, *i.e.*, the Sale Agreement. *See* Va. Code § 8.01-246(2). The Fourth Circuit rejected this very argument in *RMS Tech*, 64 F. App'x at 857. Contrary to East West's assertion, the statute of limitations for an unjust enrichment claim does not vary depending on whether the claim is "related to" a written or oral contract.[10] Rather, the three-year limitations period applicable to oral contracts applies to all unjust enrichment claims because in

---

[10] Indeed, East West's argument is inconsistent with the well-established principle that a claim for "unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures, Inc. v. Swantz*, 846 F. 2d 923, 926 (4th Cir. 1988).

bringing such a claim, the plaintiff asks the court to imply a contract in law, which is "necessarily unwritten."[11]  *Id.* at 858.

East West's unjust enrichment claim accrued on February 20, 2008, the date that Defendants registered the CARIBBEAN CRESCENT Mark.  (SAC ¶ 65; Ex. K.)  East West did not file suit until December 22, 2011, more than three years later.  And, East West does not argue that equitable estoppel saves its unjust enrichment claim.  Accordingly, the unjust enrichment claim is dismissed with prejudice.

C.  Conversion

East West conversion claim is based on Defendants' act of registering the CARIBBEAN CRESCENT Mark.  Defendants argue that East West's conversion claim fails because a trademark is not tangible property which can be converted.  The Court agrees with Defendants that the conversion of a trademark is not an actionable claim.

---

[11] *Bryan v. Nationwide Mutual Insurance Co.*, 65 Va. Cir. 233, 2004 WL 3142312 (Va. Cir. Ct. July 19, 2004), cited by East West, is inapposite.  There, the court merely held that *Belcher's* reasoning that "if a legal demand be asserted in equity which at law is barred by the statute, it is equally barred in equity" was inapplicable to the plaintiff's claim to reform a contract -- a "device founded solely in equity" which, the court concluded, could not "be perceived as having any connection to an action at law."  *Id.* at *2.  Many courts have, relying on *Belcher*, determined that under Virginia law a three-year limitations period applies to claims for unjust enrichment.  *See, e.g.*, *Seale & Assocs., Inc. v. Vector Aerospace Corp.*, No. 1:10cv1093, 2010 WL 5186410, at *4 (E.D. Va. Dec. 7, 2010); *Tao*, 299 F. Supp. 2d at 576; *Tsui v. Sobral*, 39 Va. Cir. 486, 1996 WL 1065581, at *2 (Va. Cir. Ct. July 26, 1996).  Those few that have not actually applied the more restrictive two-year limitations period set forth in Va. Code § 8.01-248.  *See Mich. Mut. Ins. Co. v. Smoot*, 183 F. Supp. 2d 808, 812 & n.1 (E.D. Va. 2001); *see also Pathak v. Trivedi*, 61 Va. Cir. 572, 2001 WL 34157360, at *5 (Va. Cir. Ct. Apr. 6, 2001).  The Court respectfully disagrees with the latter cases.

In Virginia, a party bringing a claim for conversion must allege the ownership or right to possession of the property at the time of the conversion and wrongful exercise of dominion or control over the plaintiff's property, thus depriving plaintiff of possession. *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75 (Va. 1956)). The tort of conversion generally applies to tangible property, but may apply in some cases involving intangible property. *See E.I DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09cv58, 2011 WL 4625760, at *3-5 (E.D. Va. Oct. 3, 2011). Defendants argue that Virginia courts have recognized the conversion of intangible property in limited instances "where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." (Defs.' Mem. [Dkt. 61] at 14 (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 304 (Va. 1994).)

East West relies on *DuPont* to demonstrate that the Eastern District of Virginia has adopted a more expansive view of conversion than that suggested by Defendants. In that case, the court rejected the notion that a conversion claim is necessarily fails when the allegedly converted property is intangible property not merged into a document of title or ownership. *Id.* at *5. Accordingly, the plaintiff's conversion

18

claim, which related to paper and electronic copies of documents containing confidential business information, survived the defendant's motion for judgment as a matter of law. *Id.*  In reaching its holding, the court reasoned that:

> In this technology-driven world, the value of intangible property cannot be disputed, and a decision to limit conversion to tangible property or intangible property merged into a document would leave domain name users, satellite programmers, owners of telephone networks, and internet servers, and others similarly situated unable to use an action for conversion for substantial interference with their rights.

*Id.*

The same reasoning, however, cannot be advanced to support a claim for the conversion of a trademark.  In contrast to the domain name users, satellite programmers, and owners of telephone networks and internet servers, whose intangible property has arisen in an environment of technologic advancements and who may well depend on conversion actions to protect their rights, a specialized field of law has existed to protect trademark owners for over 100 years.  Indeed, according to one leading commentator, every court to consider a "trademark conversion" claim has rejected it.  4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition 25:9.50 (4th ed. 2012) (collecting cases).  Professor McCarthy explains why such a claim is inappropriate:

> Were such a claim of "conversion" viable, it
> would mean that the tort of conversion could
> largely displace the IP laws traditionally
> defining what is an infringement of patents,
> trademarks and copyrights.  For example,
> could a plaintiff avoid the traditional
> trademark infringement test of likelihood of
> confusion and instead simply claim that
> defendant "converted" its trademark?  If so,
> over 100 years of trademark law would be
> discarded. . . .  [O]ne cannot dispense with
> the carefully constructed requirements for
> trademark protection by blithely claiming
> that defendant "converted" some symbol of
> plaintiff which may or may not be capable of
> trademark protection.  Trademark law was
> specifically constructed to balance the
> private and public interests inherent in
> commercial symbols: the tort of conversion
> was not.  It is the wrong tool for the job.

*Id.*  The Court agrees that a trademark is not the sort of

intangible property which can appropriately give rise to a

conversion claim.

East West also argues that the trademark registration

for the CARIBBEAN CRESCENT Mark is a tangible representation of

its property.  However, as another court noted when faced with

the same argument, the "proposed combination of federal

trademark law and [state] law governing conversion and chattel

just doesn't work when the chattel at issue is a federal

trademark."  *Richmond ex rel. Liberty Inst. Trust v. Nat'l Inst.

of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at

*7 (N.D. Ill. Aug. 15, 2006).  That is because "[a] trademark

exists solely because a federal statute memorialized an idea and

thereby transformed it into intellectual property protected by

20

federal law." *Id.; see also* 3 McCarthy, *supra*, § 19.3 ("Although a federal registration will give the owner of a mark important legal rights and benefits, the registration does not create the trademark.") By contrast, "property that is typically the subject of a conversion or trespass to chattel action, whether tangible or intangible, exists independently (*e.g.*, a house, a satellite signal, a customer list, *etc.*)." *Richmond*, 2006 WL 2375454, at *7. For these reasons, East West fails to state a claim for conversion. The conversion claim is dismissed with prejudice.

> D. <u>Violations of the Virginia Consumer Protection Act and Virginia Criminal Code</u>

East West's VCPA and Virginia Criminal Code claims are based on food products bearing the CARIBBEAN CRESCENT Mark which Defendants allegedly introduced into the market in the summer of 2011.[12] Defendants argue that these claims are time-barred.

The limitations period for claims arising under the VCPA and the Virginia Criminal Code is two years. *See* Va. Code § 59.1-204.1 (two-year statute of limitations for VCPA claims); *Parker-Smith v. Sto Corp.*, 262 Va. 432, 440 (Va. 2001) (applying the two-year limitations period set forth in Va. Code § 8.01-248

---

[12] The VCPA prohibits sellers from "misrepresenting" goods or services. Va. Code § 59.1-200. East West's Virginia Criminal Code claim arises under Va. Code § 18.2-216, which makes it unlawful to publish an advertisement containing untrue, deceptive or misleading statements of fact, classifying it as a Class 1 misdemeanor. Va. Code § 59.1-68.3 gives any person who suffers a loss due to a violation of § 18.2-214, *et seq.*, a cause of action for damages similar to damages recoverable under the VCPA. *See H.D. Oliver Funeral Apartments, Inc. v. Dignity Funeral Servs., Inc.*, 964 F. Supp. 1033, 1039 (E.D. Va. 1997).

to false advertising claim brought under § 18.2-216). In actions *ex contractu*, such as this case, the claim accrues when the breach of contract occurs and not when the resulting damage is discovered. Va. Code § 8.01-230; *see also Bd. of Dirs. of Lesner Pointe Condo. on the Chesapeake Bay Ass'n, Inc. v. Harbour Point Bldg. Corp.*, No. CL00-1893, 2002 WL 32072394, at *3 (Va. Cir. Ct. June 18, 2002).

Defendants assert that -- based on the Complaint and the attached exhibits -- they allegedly commenced selling products bearing the CARIBBEAN CRESCENT Mark in February 2004. Thus, according to Defendants, the statute of limitations on the VCPA and Virginia Criminal Code claims expired in February 2006. In response, East West, does not argue that Defendants *began* selling products with the CARIBBEAN CRESCENT Mark within the limitations period or that equitable estoppel saves its claims. Rather, it argues that the introduction of new products bearing the CARIBBEAN CRESCENT Mark in the summer of 2011 re-triggered the statute of limitations. Defendants take issue with this proposition, and argue that the introduction of new products to the same line under the same trademark does not re-trigger the statute of limitations. East West counters that this rule only applies when products are sold under the *same* line, and asserts that it believes that the products sold by Defendants in the summer of 2011 were under a *different* line.

22

In the cases cited by the parties, this issue arose in the context of progressive encroachment. *See Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508-cv, 2007 WL 2914452, at *2 (2d Cir. Oct. 5, 2007); *Deere & Co. v. MTD Holdings, Inc.*, No. 00 Civ. 5936, 2004 WL 324890, at *20-21 (S.D.N.Y. Feb. 19, 2004).  A defendant may not raise the defense of laches where he has "progressively encroached" on the plaintiff's trademarks.  *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002).  In other words, progressive encroachment "excuses delay in filing suit where 'defendant, after beginning its use of the mark, *redirected* its business so that it more squarely competed with plaintiff.'"  *Black Diamond Sportswear*, 2007 WL 2914452, at *2 (emphasis in original) (quoting *Pro-Fit Orthopedic & Sports Physical Therapy*, 314 F.3d at 70).

To begin, it is questionable whether progressive encroachment is applicable here, as it is a doctrine that prevents the assertion of a *laches defense* to trademark infringement claims.  Defendants do not raise a laches defense, but rather argue that Defendant's VCPA and Virginia Criminal Code claims are barred by the statute of limitations.  East West cites no cases where progressive encroachment pushed back the limitations period (as opposed to the laches period) on consumer protection claims, nor has the Court located any.  Moreover,

under Virginia law, East West's VCPA and Virginia Criminal Code accrued when Defendants allegedly breached the Sale Agreement by using the CARIBBEAN CRESCENT Mark, and not when East West discovered the resulting damage.  Progressive encroachment, by contrast, is grounded in the notion that delay should be "measured from the time at which the plaintiff knows or should know she has a provable claim . . . ."  *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008)

But even assuming that the doctrine of progressive encroachment were available to East West, the cases cited by the parties make clear that East West has failed to plead facts that would warrant its application.  In *Black Diamond Sportswear*, for example, the plaintiff argued that the defense of laches did not apply to its trademark infringement claim because certain skiwear products sold by the defendant did not directly compete with the bulk of its line.  2007 WL 2914452, at *2.  In so doing, the plaintiff attempted to narrow the relevant clothing category to "fleece skiwear."  *Id.*  The court rejected this argument, finding that the defendant's skiwear products competed directly at the outset with those of the plaintiff.  *Id.*

In *Deere*, the plaintiff raised a similar argument.  2004 WL 324890, at *20.  The court rejected the argument as to certain products made by the defendant which retained the same

color scheme over time and, thus, did not progressively encroach on the plaintiff's trade dress. *Id*. at *20-21. The court accepted the plaintiff's argument, however, with respect to a different product introduced at a later time which displayed a color scheme more closely resembling that used by the plaintiff. *Id.* at *21.

As these cases make clear, Defendants' alleged introduction of new products bearing the CARIBBEAN CRESCENT Mark in the summer of 2011 would not, in and of itself, excuse East West's delay in filing suit. Rather, the crucial factor to consider is whether Defendants edged closer to East West in product similarity. *See What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441, 451 (4th Cir. 2004). East West, however, makes no allegations of this sort. As such, the Court concludes that East West's VCPA and Virginia Criminal Code claims are time-barred. The claims are therefore dismissed with prejudice.

E.   Tortious Interference with Business Expectancy

In Count 12, East West alleges that Defendants obtained knowledge of its business relationships through the hiring of Ishmael Amin, a former East West employee. (SAC ¶ 85) East West further alleges that "Defendants have begun to intentionally interfere with [its] business relationships with its existing customers and/or its expectancy of business

25

relationships with new customers" which "has, or will shortly, cause a termination of [its] business relationship[s] or expectancy." (SAC ¶ 86.) Defendants argue that these allegations are conclusory and that the claim should be dismissed.

In order to plead a claim for tortious interference, a plaintiff must allege: (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relationship or realized the expectancy; and (4) damage to plaintiff. *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 349 (E.D. Va. 1995). Moreover, in cases involving a business expectancy, such as this, "a plaintiff must also demonstrate that the defendant employed 'improper methods' in causing the alleged interference." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 453 (E.D. Va. 2009) (citing *Duggin v. Adams*, 234 Va. 221, 226-27 (Va. 1987)).

Here, East West fails to plead facts establishing which customer relationships Defendants allegedly interfered with or how Defendants engaged in intentional misconduct or employed improper methods to interfere with those relationships.

*Cf. Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 830 (E.D. Va. 2011) (dismissing tortious interference claim where plaintiff alleged that a former employee interfered with its relationship with a specific customer, but failed to allege facts demonstrating reasonably certain business opportunities with that customer or that such expectancies were lost as a result of the defendant's misconduct).   The bare assertions in the Complaint amount to a mere recitation of the elements for a tortious interference claim, and fail to raise East West's right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.   Accordingly, East West's tortious interference claim is dismissed without prejudice.[13]

F.   Misappropriation of Trade Secrets

In Count 13, East West alleges a violation of the VUTSA.  Specifically, East West alleges that Defendants hired its former employee, Amin, and that Amin "had knowledge of [East West's] customers, [] business methods, and other company sensitive information."  (SAC ¶ 82.)  Defendants argue that East West fails to state a claim.

---

[13] Defendants argue that dismissal of East West's tortious interference claim (and VUTSA claim) should be with prejudice, as East West has amended its Complaint twice previously and further amendment, three weeks away from the close of discovery, would be unfairly prejudicial.  However, East West asserted these claims for the first time in its Second Amended Complaint, and states that it only recently became aware of the supporting facts.  And, although the discovery period is winding down, Defendants have had notice of the tortious interference claim (and VUTSA claim) for a month and a half, as they were included in the proposed Second Amended Complaint East West filed along with its Second Motion for Leave to Amend on April 17, 2012.  [Dkt. 46-1.]  For these reasons, and because leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), the Court dismisses the tortious interference claim without prejudice.

To establish a claim under the VUTSA, a plaintiff must establish that (1) the information in question constitutes a trade secret, and (2) the defendant misappropriated it.  *See MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).  The VUTSA recognizes misappropriation where a trade secret is "disclosed or used without consent by a person who, 'at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was' derived via improper means, in violation of a duty of confidentiality, or acquired by accident or mistake."  *Softech Worldwide, LLC v. Internet Tech. Broadcasting Corp.*, No. 1:10cv651, 2010 WL 4645791, at *5 (E.D. Va. Nov. 8, 2010) (quoting Va. Code. § 59.1-336).

Here, East West fails to allege what trade secrets Defendants allegedly misappropriated.  Instead, the Complaint contains conclusory allegations that Amin possessed knowledge of East West's customers and business information, but is devoid of factual allegations to support this assertion.  *See All Bus. Solutions, Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 558-59 (W.D. Va. 2009) (dismissing VUTSA claim consisting of conclusory allegations that the defendant misappropriated customer names, along with other trade secrets and confidential information, and which lacked supporting factual allegations). East West also fails to allege how Defendants have used this

28

information or that they did so knowing that the information was confidential. *See Softech*, 2010 WL 4645791, at *5 (emphasizing that misappropriation "includes a *knowledge* element") (emphasis in original).  Because "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to withstand a motion to dismiss, the Court dismisses East West's VUTSA claim without prejudice.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.  Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

An appropriate Order will issue.

_____
                              /s/
June 5, 2012                  James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE