IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

EAST WEST, LLC d/b/a                          )
CARIBBEAN CRESCENT,                           )
                                              )
        Plaintiff,                            )
                                              )
            v.                                )  1:11cv1380 (JCC/TCB)
                                              )
SHAH RAHMAN,                                  )
                                              )
and                                           )
                                              )
CARIBBEAN CRESCENT, INC.                      )
                                              )
        Defendants.                           )
————————————————————————————————              )
                                              )
CARIBBEAN CRESCENT, INC.,                     )
                                              )
    Counterclaimant and Third-Party Plaintiff, )
                                              )
            v.                                )
                                              )
EAST WEST, LLC, d/b/a                         )
CARIBBEAN CRESCENT,                           )
                                              )
        Counter-Defendant,                    )
                                              )
and                                           )
                                              )
NAEEM ZAI,                                    )
                                              )
and                                           )
                                              )
MOHAMMED SADIQ,                               )
                                              )
        Third-Party Defendants.               )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's and Third-Party Defendants' Motion for Partial Summary Judgment [Dkt. 123] ("Plaintiff's Motion") and Defendants' Motion for Summary Judgment [Dkt. 114] ("Defendants' Motion")(collectively, "the Motions").  For the following reasons, this Court will rule on the Motions as follows.

### I. Background

This case arises out of a business dispute involving alleged acts of trademark and trade name infringement, as well as breach of contract.

A. <u>The Parties</u>

Plaintiff East West, LLC ("East West") sells Jamaican and South Asian-themed food products in the Washington, D.C. metropolitan area and surrounding communities. (Second Amended Complaint ("SAC") [Dkt. 59] ¶ 2.) Third-Party Defendants Naeem Zai and Mohammad Sadiq are East West's President and Vice President, respectively.  Defendant Caribbean Crescent, Inc. is a Virginia Corporation that advertises and sells a variety of Jamaican, Indian, Asian and other food products.  Defendant Shah Rahman is President of Caribbean Crescent, Inc.

B. <u>Factual Background</u>

In June 2003, Plaintiff East West and Third-Party Defendants (collectively, the "Buyers") entered into an

2

"Agreement for Sale of Inventory/Assets" (the "Sale Agreement") with Defendant in which they agreed to purchase the "business assets known as Caribbean Crescent." (SAC ¶ 13; Ex. A ("Sale Agreement") at 1.) Defendants agreed to deliver to the Buyers all rights, title, and interest in the business assets known as Caribbean Crescent including the common law trademark CARIBBEAN CRESCENT ("the CARIBBEAN CRESCENT Mark" or "the Mark") and the trade name Caribbean Crescent. (SAC ¶¶ 17-18, 21; Sale Agreement § 1.)

The Sale Agreement contained a non-compete provision (the "Non-Compete Agreement"), in which Defendants agreed not to compete with the business being sold to the Buyers for a period of five years and within a five mile radius of the Washington Metropolitan Area. (Sale Agreement ¶ 21.) Defendants were entitled to "use [the] Carribean Crescent [as opposed to Caribbean Crescent] trade name," and to "continue [to] trade and market products and services as Carribean Crescent [as opposed to Caribbean Crescent] outside the Washington Metropolitan Area." (*Id.*)

On June 17, 2003, the parties closed on the Sale Agreement. (SAC ¶ 34.) The Buyers purchased the business assets known as Caribbean Crescent as well as Defendants' remaining inventory of goods. (SAC ¶¶ 31, 36.) The document was signed by Defendant Shah Rahman on behalf of Caribbean Crescent. The Buyers paid

$225,918 and executed a promissory note in the amount of $215,918 in furtherance of the Sale Agreement.  (SAC ¶ 40; Settlement Agreement.)  The Buyers satisfied the amount due under the promissory note over a period of approximately two and a half years.  (SAC ¶ 47.)

The parties executed an Articles of Sale and Transfer, also on June 17, 2003, in which CCI transferred all of the assets of Caribbean Crescent, including the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark to East West.  (SAC ¶ 44; Ex. D.)  That same day, the parties entered into a Financing Statement in which CCI was the Secured Party and Buyers were the Debtor, and which covered all "Goodwill, the trade name 'CARIBBEAN CRESCENT' [sic] and all derivatives thereof; customer lists; and telephone numbers."  (SAC ¶ 45; Ex. E.)  The Buyers thereupon began using the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark, and East West began doing business as Caribbean Crescent.  (SAC ¶¶ 48-50.)

On February 23, 2004, East West and CCI entered into a Commission Agreement, which provided that East West would handle all sales of Defendants' Jamaican patties product in the Washington Metro Area.  (SAC ¶¶ 55-56; Ex. I.)  East West was entitled to a twenty percent commission for such sales.  (*Id.*)  The Commission Agreement also established a five percent commission to be paid by East West to CCI for all sales of East

West's products made by Rahman.  (SAC ¶ 57.)  East West alleges

that Defendants have never paid any commissions on any of the

sales made pursuant to the Commission Agreement.  (SAC ¶ 59.)

Defendants allegedly violated the Non-Compete Agreement and

the sale and assignment of the trade name Caribbean Crescent by

competing against East West and using the trade name Caribbean

Crescent within a five-mile radius of the Washington Metro Area

"sometime between June 17, 2003 and June 16, 2008."  (SAC ¶¶ 60,

62.)  Defendants also allegedly began using the CARIBBEAN

CRESCENT Mark "sometime shortly after" the sale and assignment

of the Mark to East West.  (SAC ¶ 64.)  East West alleges, on

information and belief, that a number of the products sold by

Defendants under the trade name Caribbean Crescent and bearing

the CARIBBEAN CRESCENT Mark were first introduced into the

market in June or July of 2011.  (SAC ¶¶ 61, 63.)

On or about February 20, 2008, Defendants allegedly filed a

trademark application with the United States Patent and

Trademark Office for the CARIBBEAN CRESCENT Mark, despite having

sold and assigned the Mark to East West over four years earlier.

(SAC ¶¶ 65-66.)  Defendants allegedly made various fraudulent

statements regarding their purported ownership and use of the

CARIBBEAN CRESCENT Mark in filing and prosecuting the trademark

application.  (SAC ¶¶ 66-70.)  The PTO ultimately accepted the

trademark application and registered the CARIBBEAN CRESCENT Mark. (SAC ¶ 79.)

On or about October 30, 2008, Rahman sent a facsimile to East West claiming ownership of the CARIBBEAN CRESCENT Mark. (SAC ¶ 71.)  Rahman sent two subsequent facsimiles to East West in which he expressed a desire to clear up their misunderstandings. (SAC ¶¶ 72-73; Exs. N, O.)  On December 15, 2008, East West sent a letter by counsel to Rahman asserting that it had purchased all of CCI's assets, including the trade name Caribbean Crescent. (SAC ¶ 74; Ex. P.)

In January 2009, Rahman advised Zai that Rahman's father, who was terminally ill with cancer, wished to meet with him to help resolve the problems between the parties. (SAC ¶ 75.)  In February 2009, Sadiq and Zai visited Rahman's father. (SAC ¶ 77.)  Rahman was also present. (*Id*.)  At that time, Rahman's father allegedly stated that Rahman had not honored the agreements between the parties but that he would from that point on. (*Id*.)  Rahman himself allegedly agreed to honor the parties' agreements as well. (*Id*.)

In February or March of 2011, Defendants hired a former employee of East West named Ishmael Amin. (SAC ¶ 82.)  According to East West, Amin had knowledge of its customers, its business methods, and "other 'company sensitive' information." (Id.)  Much of this information was valuable, not known outside

of its business, was protected, and would be difficult, if not impossible, for Defendants to acquire or duplicate.  (SAC ¶ 83.) Defendants have allegedly obtained proprietary information and knowledge of East West's business relationships through Amin. (SAC ¶¶ 85, 88.)  East West alleges that Defendants have begun to interfere with East West's business relationships and to use its proprietary information.  (SAC ¶¶ 86-87.)

In June or July of 2011, Rahman approached Zai and Sadiq with new products displaying the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark and asked if East West would sell those products in the Washington Metropolitan Area.  (SAC ¶ 80.)  When Zai and Sadiq refused, Rahman informed them that he would proceed to sell the products using a different distributor. (*Id.*)  East West asserts that this was the point in time at which it "lost all hope" that Defendants would honor the parties' agreements despite the assurances previously made by Rahman. (*Id.*)

C. Procedural Background

The original Complaint in the instant case was filed on December 22, 2011 and has since been superseded.  [Dkt. 1.] On February 16, 2012, Defendants filed their Answer to the original Complaint. [Dkt. 13.]  Additionally, in the same filing, the initial Defendants asserted a Third-Party Complaint against Sadiq and Zai, as well as several Counterclaims against East

West. [Dkt. 13.]  Of particular relevance to the present
business, Defendants' counterclaimed against East West for (1)
trademark counterfeiting, trademark infringement, unfair
competition, and false designation of origin under the Lanham
Act, 15 U.S.C. § 1125 *et seq.*; 15 U.S.C. § 1114(a); and (2)
trademark infringement, unfair competition, and false
designation of origin under the common law.  On May 9, 2012,
Plaintiff filed their Second Amended Complaint (the "Second
Complaint").[1]  [Dkt. 59.]  The Second Complaint contains thirteen
causes of action: (1) federal trademark infringement, false
designation of origin, and false representations in commerce
under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2)
common law trademark infringement; (3) federal unfair
competition, passing off, false advertising, trade name
infringement and/or false designation of origin under 15 U.S.C.
§ 1125(a); (4) common law unfair competition and trade name
infringement; (5) violation of the Virginia Consumer Protection
Act ("VCPA"), Va. Code § 59.1-196, *et seq.*; (6) violation of the
Virginia Criminal Code, Va. Code § 18.2-216, *et seq.*; (7) breach
of contract; (8) unjust enrichment; (9) conversion; (10)
cancellation of registration; (11) for permanent injunctive
relief; (12) tortious interference with business
relationship/intentional interference with economic advantage;

---

[1] The complete procedural history of this case is outlined in the Court's
Memorandum Opinion dated May 15, 2012. (*See* Mem. Op. [Dkt. 63] at 1-4.)

and (13) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336, *et seq.*

On May 10, 2012, Defendants filed a Motion to Dismiss certain claims in the Second Complaint. [Dkt. 60.] Plaintiff filed their Opposition on May 24, 2012 [Dkt. 65], to which Defendants replied on May 30, 2012 [Dkt. 66]. On June 5, 2012, this Court granted in part and denied in part Defendants' Motion, dismissing Counts 5, 6, 8, 9, 12, and 13 of the Second Complaint. The Court denied Defendants' Motion to Dismiss as to Count 7. [Dkt. 69.] On June 8, 2012, Defendants filed their Third Amended Complaint (the "Third Complaint")("TAC"). [Dkt. 80.] The Third Complaint contains seven causes of action: (a) trademark infringement under (i) the Lanham Act, 15 U.S.C. § 1125 *et seq.*; 15 U.S.C. § 1114(a) and (ii) common law; (b) unfair competition, passing off, false advertising, trade name infringement, and/or false designation of origin under (i) the Lanham Act, 15 U.S.C. § 1125(a) and (ii) common law; (c) breach of contract; (d) cancellation of trademark registration; and € permanent injunctive relief. (TAC ¶ 2.) On August 1, 2012, Defendants filed a Motion for Summary Judgment [Dkt. 114] and a Memorandum in Support [Dkt. 115], as well as several accompanying Affidavits in Support with accompanying Exhibits [Dkts. 116-17]. On the same day, Plaintiff filed a Motion for

Partial Summary Judgment [Dkt. 123] and a Memorandum in Support [Dkt. 124].  On August 15, Defendants filed a Memorandum in Opposition to Plaintiff's Motion [Dkt. 130], as well as several Declarations in Opposition [Dkts. 131-32].  On the same day, Plaintiff filed a Memorandum in Opposition to Defendants' Motion [Dkt. 133], as well as several Declarations in Opposition [Dkts. 134-35].  On August 27, Plaintiff filed a Reply Brief in Support of their Motion [Dkt. 148] and an Affidavit in Support [Dkt. 149].  On the same day, Defendants filed a Reply in Support of their Motion.  [Dkt. 150.]

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a

genuine dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party opposing summary judgment may not rest upon mere allegations or denials.  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Both parties are moving for summary judgment to varying degrees in this case.  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties

deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and quotation marks omitted).  The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment, nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Continental Air., Inc. v. United Air., Inc.*, 277 F.3d 499, 511 n. 7 (4th Cir. 2002) (citations and quotation marks omitted).

Defendants are moving for summary judgment on Counts 1, 2, 3, 4, and 5 of Plaintiff's Third Complaint (TAC ¶¶ 17-23). Plaintiff is moving for summary judgment on Count 1, Count 2, and Count 6 of their Third Amended Complaint.  (TAC ¶¶ 17-24.) In addition, Plaintiff and Third-Party Defendants are also moving for summary judgment as to Count 1 and 2 of Defendants' Counterclaims.

A. <u>Parties' Motions for Summary Judgment on Plaintiff's Trademark Infringement, False Designation of Origin, and False Representation in Commerce Claims under both the Lanham Act and Common Law</u>

The Court will first address Plaintiff's trademark infringement, use of false designations of origin, and false

representation claims under both the Lanham Act, 15 U.S.C. §
1125(a), and the common law of Virginia.  A "trademark" is "a
designation used 'to identify and distinguish' the goods of a
person," while a "service mark" is a designation to identify and
distinguish the services of a person. J. Thomas McCarthy,
*McCarthy On Trademarks and Unfair Competition* § 3:1.  Of
particular relevance to the present case, a "trade name" is
defined as "any name used by a person to identify his or her
business or vocation."  A mark can simultaneously be a trademark,
service mark, and trade name.  15 U.S.C. § 1127.

    i.   Trademark Infringement, False Designation of Origin,
         and False Representation in Commerce

    Congress' effort to eliminate confusion in the marketplace
as to the identification of goods and services is embodied in
the Lanham Act, 15 U.S.C. §§ 1051-1127 (1982).  Plaintiff has
based their claim upon, in particular, § 1125(A).  Section 43(a)
creates a cause of action against:

            [a]ny person who, on or in connection with
            any goods or services, ... uses in commerce
            any word ... [or] name ..., or any false
            designation of origin, false or misleading
            description of fact, or false or misleading
            representation of fact, which (A) is likely
            to cause confusion, or to cause mistake, or
            to deceive as to the affiliation, connection,
            or association of such person with another
            person, or as to the origin, sponsorship, or
            approval of his or her goods, services, or
            commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).  "Section 43(a) of the Lanham Act
[...] has been construed to protect against trademark, service
mark, and trade name infringement even though the mark or name
has not been federally registered." *Perini Corp. v. Perini
Const.*, Inc., 915 F.2d 121, 124 (4th Cir. 1990).

Both infringement and false designation of origin have five
elements.  In order to prevail, the trademark holder must prove:
(1) that it possesses a mark; (2) that the [opposing party] used
the mark; (3) that the [opposing party's] use of the mark
occurred "in commerce"; (4) that the [opposing party] used the
mark "in connection with the sale, offering for sale,
distribution, or advertising" of goods or services; and (5) that
the [opposing party] used the mark in a manner likely to confuse
consumers. *See People for the Ethical Treatment of Animals v.
Doughney*, 263 F.3d 359, 365 (citing *Lone Star Steakhouse &
Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th
Cir. 1995)); *see also* 15 U.S.C. § 1125(a) (1994).  Because the
test for trademark infringement under the Lanham Act is
essentially the same as the common law trademark infringement
and unfair competition claim under Virginia law, which likewise
focuses on the likelihood of confusion among consumers, they
claim need not be analyzed separately.[2]

---

[2] *See Lamparello v. Falwell*, 420 F.3d 309, 312 n. 1 (4th Cir. 2005); *Lone Star*,
43 F.3d at 930 n. 10 (internal citations omitted); *Teaching Co. Ltd.*

Existence of a registered mark is "prima facie evidence of the validity of the registered mark [...], of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark ..." *Emergency One v. American Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir.2003).  However, Plaintiff does not own the registration of the trade name CARIBBEAN CRESCENT.  Therefore, it must be determined what protectable marks, if any, Plaintiff has acquired at common law.

As a general matter, "[a]t common law, trademark ownership is acquired by actual use of the mark in a given marketplace." *Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Protection, LLC*, 419 F.Supp.2d 861, 867 (E.D.Va 2006)(citing *United Drug Co., v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98 (1918)). The mark's owner acquires "both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." *Id*.  Where two users claim a right to use the same or similar mark, the first user to validly appropriate use of that mark generally has priority over the second, or junior, user. *Id*. "[A] plaintiff asserting a claim of infringement against common-law trademark ownership rights bears the burden of establishing its exclusive right to use the mark by actual use in a given territory." *Id*.

---

*Partnership v. Unapix Entertainment*, Inc., 87 F.Supp.2d 567, 575 (E.D.Va.2000).

Because the issue continues to be disputed between the parties, this Court finds it appropriate to address the threshold issues of ownership.  In its previous Memorandum Opinion on Defendants' Motion to Dismiss, this Court examined the language of the pertinent agreements relating to the 2003 sale of business assets between the parties. [Dkt. 68.]  This Court found that Defendants had indeed transferred the common law rights, goodwill, and interest to the trade name to Plaintiff.  To be sure, it is clear from the respective language of both the Sale Agreement and Financing Agreement that Defendant Rahman assigned the extent of his ownership of the trade name CARIBBEAN CRESCENT to Plaintiff, and thus Plaintiff stands on the same ground in the Washington Metropolitan Area as did Defendants.  *See Hough Mfg. Corp. v. Virginia Metal Indus.*, 453 F.Supp. 496, 499 (E.D.Va. 1978). Consequently, it may rightfully be said that to the Plaintiff inures the benefit of the common law ownership and primacy that Defendants previously possessed in the Washington Metropolitan Area as to the trade name CARIBBEAN CRESCENT.  Consequently, this Court finds that Plaintiff East West validly possesses common law ownership of the mark and trade name within the Washington Metropolitan Area.

However, there remains to be addressed the crucial question of the scope of the Plaintiff's ownership of the trade name, as well as what interest, if any, remained with the Defendants, as

the resolution of the matter bears greatly upon defining the contours of this case and the extent of Plaintiff's ability to assert infringement against Defendants.

Addressing a preliminary issue, Defendants have continually asserted their belief that the sale of business assets in 2003 resulted in a grant to Plaintiff of a five-year license to the name CARIBBEAN CRESCENT, after which Plaintiff would no longer be entitled to use the trade name.  This Court has already foreclosed such a reading in its previous Memorandum Opinion on Defendants' Motion to Dismiss.  Furthermore, the facts of the instant case do not demonstrate the existence that a licensing arrangement between the parties.  After an assignment, the parties may license-back the mark "to enable the assignor-licensee to continue to conduct the same business or provide the same services under the mark." *Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371, 1376-77 (Fed.Cir. 1982).  In order to be a valid license, the licensor must adequately control the quality of the goods and services provided by the licensee under the mark. *Id.* at 1377.  In the instant case, it appears that no such arrangement existed. There has not been evidence put forth that either party exerted control over the quality of the products manufactured and distributed by the other, or that parties even made any overt attempts to do so. Consequently, this Court finds Defendants' assertion that the

transfer of business assets resulted in a license on the trade name to Plaintiff to be lacking a factual basis and without merit.

Regarding the inquiry as to the scope of Plaintiff's rights of ownership of the trade name, by expressly allowing Defendants to use the name CARIBBEAN CRESCENT outside of the Washington Metropolitan Area, Plaintiff contracted away their ability to assert the primacy of their common law rights to the trade name, as based upon the transfer of business assets, in any area except the Washington Metropolitan Area. Consequently, this Court is not apprised of the basis upon which Plaintiff would be able to assert infringement by Defendants except within the aforementioned area. To the extent that Plaintiff may assert any claim of trademark infringement against Defendants, such claims must surely be confined to actions or transactions that have taken place within the Washington Metropolitan Area, as Plaintiff has simply contracted away their ability to assert infringement elsewhere.

Touching on the question of whether the Plaintiff has a valid, protectable mark, the degree of protection is "directly related to the mark's distinctiveness." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). A plaintiff can show the validity of his mark in two ways: (1) that plaintiff's mark was inherently distinctive; and (2) that

even if the plaintiff's mark is not inherently distinctive, the mark has become distinctive by acquiring secondary meaning. *See, e.g., Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488, 494 (E.D.Va. 1999).

Regarding distinctiveness, in the seminal decision of *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976), Judge Henry J. Friendly classified marks into four categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* at 9. If a term is generic (the common descriptive name for a thing), it is not eligible for trademark protection because the public has an inherent right to call a product by its generic name. *Perini Corp.*, 915 F.2d at 124 (citing *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985)(internal citations omitted). If terms are fanciful (words invented solely for their use as trademarks), arbitrary (common words applied in unfamiliar ways), or suggestive (words that are partially descriptive and partially fanciful), the association between the mark and its source is presumed and the mark is eligible for trademark protection. *Id.* at 125.

This Court finds no issue of material fact as to the inherent distinctiveness of the name CARIBBEAN CRESCENT. The imagery evoked by the trade name is not that of food or products related to food, but rather of the sandy, crescent-shaped

tropical beaches for which the geographic area of the Caribbean has traditionally been known. Such imagery does not induce any logical association with food, much less the specific products that bear the instant trade name. Further, regarding the gastronomic classification of the subject food, to be sure, the products produced under the company name CARIBBEAN CRESCENT are by no means exclusively Caribbean in theme. In fact, it cannot be said that even a majority of the cuisine produced under the name is thematically Caribbean. Consequently, the trade name CARIBBEAN CRESCENT cannot rightly be said to be a trade name that is descriptive of the product to which it has been adhered. Furthermore, neither of the parties have proffered evidence that the Patent and Trademark Office required Defendants to demonstrate secondary meaning upon consideration of their application for registration. Regarding the evidence *in toto*, this Court finds CARIBBEAN CRESCENT to be suggestive, inherently distinctive in nature and eligible for trademark protection without the necessity of proving secondary meaning.

It is unnecessary for the Court to engage in a protracted analysis of the second, third, and fourth elements of Plaintiff's claim. The evidence is uncontroverted that Defendants used the name CARIBBEAN CRESCENT, and that they used it in commerce, specifically, through the sale of food products and similar goods in the Washington Metropolitan Area. Likewise,

the fact that Defendants used the name "in connection with the sale, offering for sale, distribution, or advertising" of goods or services is similarly incontrovertible from the party's pleadings. The Court will not further belabor an analysis of these factors.

Regarding the fifth element, likelihood of confusion is a "factual issue dependent on the circumstances of each case." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 405 F.Supp.2d 680, 690 (E.D.Va. 2005). To prove a likelihood of confusion, Plaintiff must show more than a mere possibility of confusion. Instead, they must show a probability of confusion. *U.S. Conference of Catholic Bishops* v. *Media Research Ctr.*, 432 F. Supp. 2d 616, 623 (E.D.Va. 2006)(internal citations omitted). It bears mentioning within the context of the instant case that the Fourth Circuit has emphasized that the absence of direct competition between the goods identified by the alleged infringer's mark and the goods with the protected mark is not a bar to relief. *See AMP, Inc. v. Foy*, 540 F.2d 1181, 1183 (4th Cir. 1976). In *Pizzeria Uno Corp. v. Temple*, the Fourth Circuit identified several nonexclusive factors that they consider in ascertaining the likelihood of confusion between two trademarks, which include:

> (1) the distinctiveness of the senior mark;
> (2) the similarity of the two marks; (3) the
> similarity of the goods and services that

> the marks identify; (4) the similarity of
> the facilities employed by the parties to
> transact their business; (5) the similarity
> of the advertising used by the parties; (6)
> the defendant's intent in adopting the same
> or similar mark; and (7) actual confusion.

*Pizzeria Uno Corp,* 747 F.2d 1522, 1527 (4th Cir. 1984).  These

*Pizzeria Uno* factors are not always weighted equally, and not

all factors are relevant in every case.  *See CareFirst of Md.,*

*Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006).

Having already addressed distinctiveness, this Court will

address the factors promulgated in *Pizzeria Uno*.  The similarity

of the two marks and trade names need not be analyzed at length,

as they are identical in the instant case.  Regarding the goods

and services that identified by the trade name, it is evident

from the undisputed facts of this case that the parties both

engage in the distribution and sale of food products.  However,

Defendants dispute the degree to which their respective products

are similar.  In particular, Defendants assert that the products

bearing the mark differ and that the respective packaging of the

products is dissimilar. (Def. Opp'n Pl. Mot. 17.)  As to the

panoply of products issued by the parties under the name, it is

undisputed by the parties that the Plaintiff issued products to

customers that have been voluntarily purchased from the

Defendants.  It is unclear to this Court what proportion of the

products issued by Plaintiff that originated with the Defendants,

however, the Court feels that such products should be discounted for purposes of the instant analysis.

As to the similarity of advertising used by the parties, the record offers scant evidence as to the array of advertising originating with the Plaintiff.  To be sure, it is undisputed that for years the Plaintiff received flyers, posters, and other promotional materials from Defendant that advertised Defendants' CARBBEAN CRESCENT products and used them for their own advertising purposes. (Def. Mem. Supp. Def. Mot. 20.) Plaintiff further made these materials available to customers and further displayed these advertisements on the walls of its Washington, D. C. store.  (*Id*.)  Under these circumstances, while the advertising utilized by the parties may be said to be similar, even perhaps identical, this Court believes that at the very least Plaintiff either impliedly or expressly consented to any likelihood of confusion that might result from the display of those advertising materials.  As to advertising originating with the Plaintiff, the parties disagree as to the similarity. The evidence shows a significant advertising disparity between the parties.  While Defendants allege that they advertise extensively, Plaintiff has previously admitted it does little-to-no advertising and did not do any advertising at all before 2009.  (Sadiq Dep. 118:16-120:11, 125:4-7; East West Dep. 172:10-22.)  As to the similarity or dissimilarity of the

facilities by which the parties conduct their respective businesses, Defendants dispute Plaintiff's contention that the parties share similar facilities.  (Def. Mem. Opp'n Pl. Mot. 5.) Defendants assert that while Plaintiff has a physical store, Defendants do not have any such facility.  The undisputed evidence shows that Plaintiff does, in fact, have a store in the Washington Metropolitan Area, though the Court's ability to surmise similarity or dissimilarity essentially ends there. Finally, there has been scant record evidence offered as to actual confusion among customers, and what little allegation exists is merely anecdotal.

Having examined the foregoing factors, this Court is left with the impression with that there exist genuine issues of material fact as to likelihood of confusion.  Viewed in a light most favorable to Plaintiff, the evidence shows that Defendants transacted business in similar goods and services in the same market as Plaintiff while using the same trade name.  Certainly, such circumstances may give rise to a likelihood of confusion, and Defendants have not made a showing that no reasonable juror could return a verdict for Plaintiff on the issue.  Viewed in a light most favorable to Defendants, the evidence is insufficient to show that there is a likelihood of confusion between the products of the parties or their actual businesses in practice, and what little substantive evidence exists pertaining to the

*Pizzeria Uno* factors demonstrates marked differences between the business themselves and products of the respective parties, and there exists further evidence that much of the potentiality for likelihood of confusion was facilitated by Plaintiff themselves. Plaintiff has not made a showing that no reasonable juror could return a verdict for Defendants as to likelihood of confusion.

### ii.   Affirmative Defenses

Defendants assert a number of affirmative defenses to Plaintiff's trademark infringement claim, including acquiescence, laches, and the expiration of the statute of limitations.  Where the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would entitle it to a directed verdict if not controverted at trial).

Regarding the affirmative defenses of acquiescence and latches, the rule promulgated in *Sara Lee* clearly indicates that while laches and acquiescence are available in an infringement context to bar a claim for damages, the defenses cannot bar permanent injunctive relief where there is a "strong" or

manifest showing of likelihood of confusion.[3] *See Sara Lee,* 81 F.3d at 461, 463; *see also Creative Computer Visions, Inc. v. Laser Learning Techs.*, 931 F.Supp. 455, 457-58 (S.D.W.Va. 1996).

### a. Acquiescence

Acquiescence is a doctrine based on consent. Both acquiescence and laches "connote consent by the owner to an infringing use of his mark," but "acquiescence implies active consent." *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*, 357 F.3d 441 (4th Cir. 2004)(quoting *Sara Lee*, 81 F.3d at 462). Under this doctrine, which is incorporated into 1115(b)(9), "[a]n infringement action may be barred [...] where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." *Id.* As with laches, acquiescence assumes a "preexisting infringement" that "requires that the trademark owner knowingly consent — albeit actively — to the defendant's infringing use of the mark." *Id.* at 463.

The extent to which Plaintiff objected to Defendants' use of the subject trade name is highly disputed between the parties. In essence, it is Defendants' contention that Plaintiff conveyed through affirmative world and deed that they would not assert a claim against Defendants. (Def. Mem. Supp. Def. Mot. 20.)

---

[3] The reason for this limitation emanates from the "right of the public in being protected against the continuing use of clearly confusing marks." 4 McCarthy, *supra* § 31.04.

Defendants state that Plaintiff made many purchases from
Defendants, and that Defendants subsequently made product
deliveries to Plaintiff in a van bearing the mark CARIBBEAN
CRESCENT.  Defendants also state that they delivered to
Plaintiff dozens of invoices bearing the mark CARIBBEAN CRESCENT.
(*Id*. at 21.)  Defendants further assert that Plaintiff's
purchases of Defendants' products from third parties connote
acquiescence, as does Plaintiff use of Defendants' advertising
materials.  (*Id*.)  Plaintiff denies that they acquiesced to
Defendants' infringing behavior and states that they repeatedly
demanded that Defendants stop using the name and mark CARIBBEAN
CRESCENT.  (Pl. Opp'n Def. Mot. 16.)  Instead, they contend that
Defendants were merely their "supplier[s]."  (*Id*.)  Plaintiff
states that, as a consequence, Plaintiff's purchases from the
Defendants "could not have been a representation that [they]
would not accuse Defendants of trademark infringement for any
sales made to third parties."  (*Id*.)  With respect to the
purchases made by Plaintiff from third parties, Plaintiff states
that those were only "occasional" and "do not rise to the level
of a representation that Plaintiff would not sue Defendants for
their sales to third parties." (*Id*.) Plaintiff further asserts
that they repeatedly told Defendants that they were in breach of
their agreement and that they had no right to use the name or
mark within the designated five year non-compete period, and

that any such sales bearing the name or mark CARIBBEAN CRESCENT
must be outside of the Washington Metropolitan Area.  (*Id.*)
Plaintiff states that "[i]n nearly each case, Defendant Rahman
stated that he was only making a living, he wasn't making very
many sales, and these minor sales weren't hurting anyone."
(*Id.*)

Plaintiff asserts that the fact that East West purchased
products from the Defendant CCI "does not give [...] permission
to infringe upon Plaintiff's trademark by selling CARIBBEAN
CRESCENT branded products to third parties." (*Id.* at 16.)
However, it is difficult to reconcile this assertion with the
undisputed fact that, in the event that Defendant CCI did not
have a CARIBBEAN CRESCENT-marked product in stock, Defendants
referred Plaintiff to a third-party distributor in the
Washington Metropolitan Area that carried the product.
Plaintiff would engage these third-party distributors, such as
Restaurant Depot and International Wholesale Market, and
purchase the desired product, thereby essentially facilitating
the very infringement about which they now complain. (Def. Mem.
Supp. Def. Mot. 21.)  Furthermore, it is undisputed that
Plaintiff purchased large quantities of allegedly infringing
products, advertising materials, and other business related
material from Defendants for use in their own business. (Def.
Mem. Supp. Def. Mot. 20.)  However, addressing Plaintiff's

contentions, if Defendants were represented as mere "suppliers," then Plaintiff's engagement with Defendants and their associated products is more understandable.  Furthermore, if in fact Defendant Rahman dissuaded Plaintiff from acting upon the alleged infringement by means of misrepresentation of his actions, then that too would serve as a countervailing consideration.  In addition, Plaintiff's express objections to Defendants' use seemingly refute the notion that they acquiesced.

Examining the evidence in a light most favorable to the Defendants, the evidence shows that Plaintiff's actions indicate their acceptance, even facilitation, of the infringement of which Plaintiff now complains.  Consequently, Plaintiff has not made a showing that no reasonable juror could return a verdict for Defendants as to Plaintiff's acquiescence.  Examining the evidence in a light most favorable to the Plaintiff, Plaintiff's repeated, express objections to Defendants' allegedly infringing behavior, as well as Defendant Rahman's allegedly disingenuous if not false representations to Plaintiff, seemingly foreclose the assertion of acquiescence.  Consequently, Defendants have not made a showing that no reasonable juror could return a verdict for Plaintiff on the issue of acquiescence.

b. <u>Laches</u>

Estoppel by laches generally applies in a trademark infringement action to preclude relief for an owner of a mark

who has unreasonably slept on his rights. See *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990). Courts may apply estoppel by laches to deny relief to a plaintiff, despite having knowledge of an infringement, who has unreasonably delayed in seeking redress to the detriment of the defendant. *What-A-Burger of Va., Inc.*, 357 F.3d at 448-49 (quoting *Sara Lee Corp.*, 81 F.3d at 461). Consequently, a court's consideration of laches in context of trademarks should encompass the following questions: (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." *Id* at 449. (quoting *Brittingham*, 914 F.2d at 456). Because the Lanham Act does not include a limitations period, courts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom. *Id.; see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (affirming district court's application of laches where plaintiff "permitted [defendant's] advertising and the development of its products to go unchecked" and "sat idly by and chose not to challenge [defendant's] use of [the mark] with respect to its products");

5 McCarthy at § 31:12 ("[l]aches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark.").

In the instant case, the first factor has clearly been met. It is not disputed that the Plaintiff knew of Defendants' infringing use of the trade name CARIBBEAN CRESCENT at some point in and around 2003 or 2004. As this knowledge relates to the second *What-A-Burger* factor, Defendants assert that that this constitutes an unreasonable and inexcusable delay. However, a trademark owner "has no obligation to sue" until the "likelihood of confusion looms large" and, consequently, Plaintiff disputes Defendants' contention that the delay in bringing suit was unreasonable. *What-A-Burger of Va., Inc.*, 357 F.3d at 451. In the instant case, the Plaintiff states that "it wasn't until Defendant CCI applied for the CARRIBEAN (sic) CRESCENT trademark in February of 2008 that Plaintiff realized that there may be a large problem with likelihood of confusion [...]," having been previously dissuaded from the impression as a consequence of Defendant Rahman's reassurances and the course of dealing between the parties. (Pl. Rep. Br. Supp. Pl. Mot. 15.) Examining the evidence in a light most favorable to the Plaintiff, the evidence demonstrates that it is conceivable that Plaintiff believed that there was no likelihood of confusion

until Defendants applied for the trademark in 2008.  Defendants have therefore not made a showing that no reasonable juror could return a verdict for Plaintiff as to the issue.  Viewing the evidence in a light most favorable to the Defendants, it is conceivable that the multi-year delay between Plaintiff's discovery of Defendants' infringement and when the Plaintiff ultimately brought suit constitutes an unreasonable and inexcusable delay.  Viewing the evidence in a manner most favorable to the Defendants, Plaintiff has not made a showing that no reasonable juror could return a verdict in favor of Defendants on this issue.[4]

### c. Statute of Limitations

Defendants contend that the applicable statute of limitations bars Plaintiff's claims.  (Def. Mem. Supp. Def. Mot. 30.)  Although there is no express federal statute of limitations for civil trademark infringement claims, federal courts generally follow the limitations period for the most analogous state-law cause of action from the state in which the claim is heard.  In the instant case, the statute of limitations applicable to Plaintiff's federal and common law claims for trademark infringement and unfair competition is two years.  *See Teaching Co. Ltd. P'ship*, 87 F.Supp.2d at 585 (citing *Unlimited*

---

[4] Having found genuine issues of material fact to exist as to the second *What-A-Burger* factor, the Court will forgo addressing the third factor within the context of the present Motions for Summary Judgment.

*Screw Prods., Inc. v. Malm*, 781 F.Supp. 1121, 1125 (E.D.Va.
1991) (stating that claims under the Lanham Act are analogous to
fraud claims and Virginia's two-year statute of limitations
applies)); *see also* VA.CODE ANN. §§ 8.01-249, 8.01-243(A)
("[E]very action for damages resulting from fraud, shall be
brought within two years after the cause of action accrues").

Accrual of a cause of action in a federal action, even one
that borrows a state statute of limitations, is a question of
federal law. *See Synergistic Int'l, L.L.C. v. Korman*, Civil No.
2:05cv49, 2007 WL 517677 at *9 (E.D.Va. 2007). "Federal law holds
that the time of accrual is when plaintiff knows or has reason
to know of the injury which is the basis of the action." *See
Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)(accrual of
federal civil rights action is a question of federal law);
*Fischer v. Viacom Int'l, Inc.*, 115 F.Supp.2d 535, 539 (D.Md.
2000)(applying *Cox* to a Lanham Act claim). Specifically, under
trademark law, a cause of action is complete when, on all the
facts and circumstances, a plaintiff concludes or should
conclude that a likelihood of confusion is present, not merely
when a confusingly similar use is uncovered. *See Teaching Co.*,
87 F.Supp.2d at 585.

In this case, Plaintiff has indicated that that it was not
until February of 2008 that they concluded that the likelihood
of confusion between the business entities and associated

products would be substantially problematic. (Pl. Rep. Br. Supp. Pl. Mot. 15.)  However, this is not necessarily dispositive of the inquiry as to the date at which Plaintiff's cause of action accrued, as it only represents the temporal mark at which Plaintiff became obligated to pursue legal action.  The record is unclear upon when likelihood of confusion first arose and, as a result, is unable to precisely delineate the relevant temporal boundaries.  Regardless, it is facially clear that, whether the period began in February 2008 or at some point prior, the two-year statute of limitations has since expired.

However, contrary to Defendants' argument, the statute of limitations does not necessarily act as a bar to the entirety of the infringing acts about which Plaintiff complains.  When a defendant commits multiple wrongful acts, a separate statute of limitations attaches to each wrongful act.  *Id.* at 586. Consequently, acts of infringement alleged to have been committed by the Defendant that fall within the limitations period are still actionable for damages.

Additionally, if the Defendants have been found to have committed the trademark infringement alleged in this case, such acts constitute a continuing harm, and there is little doubt that money damages are inadequate to compensate for continuing harm.  *Id*. at 587.  Generally, the equitable remedy of an injunction is not granted unless the remedy at law, or monetary

damages, is inadequate. *See* 5 MCCARTHY § 30-1 at 30-6.  In this case, injunctive relief is available, as the Fourth Circuit has held that irreparable injury necessary for injunctive relief regularly follows from trademark infringement. *See Lone Star*, 43 F.3d at 939.

> B.  <u>Defendants' Motion for Summary Judgment on Plaintiff's Unfair Competition, Passing Off, False Advertising, Trade Name Infringement, and False Designation of Origin Claim under Federal Law (the Lanham Act, 15 U.S.C. § 1125(A))</u>

In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is obliged to show the court that "it ha[d] a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star*, 43 F.3d at 930.  Having already determined that genuine issues of material fact exist in this case so as to preclude summary judgment for either party on the foregoing claims, this Court will deny Defendants' motion for summary judgment as to the components of Plaintiff's claim relating to trade name infringement, passing off, and false designation of origin.

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which [...] in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods,

services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B).
A plaintiff asserting a false advertising claim under the Lanham
Act must establish that:

> (1) the defendant made a false or misleading
> description of fact or representation of
> fact in a commercial advertisement about his
> own or another's product; (2) the
> misrepresentation is material, in that it is
> likely to influence the purchasing decision;
> (3) the misrepresentation actually deceives
> or has the tendency to deceive a substantial
> segment of its audience; (4) the defendant
> placed the false or misleading statement in
> interstate commerce; and (5) the plaintiff
> has been or is likely to be injured as a
> result of the misrepresentation, either by
> direct diversion of sales or by a lessening
> of goodwill associated with its products.

*Scotts Co. v. United Industries*, 315 F.3d 264, 272 (4th
Cir.2002)(internal citations omitted). "Where the advertisement
is literally false, a violation may be established without
evidence of consumer deception." *Cashmere & Camel Hair Mfrs.
Inst. V. Saks Fifth Ave.*, 284 F.3d 302, 311.  But if "a
plaintiff's theory of recovery is premised upon a claim of
implied falsehood, a plaintiff must demonstrate, by extrinsic
evidence, that the challenged [advertisements] tend to mislead
or confuse consumers." *Johnson & Johnson Merck Consumer Pharm.
Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.
1992); *see also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6,
14 (7th Cir. 1992) ("[A] court may find on its own that a

statement is literally false, but, absent a literal falsehood, may find that a statement is impliedly misleading only if presented with evidence of actual consumer deception.").

In the instant case, Plaintiff has stated that they do almost no advertising themselves.  The facts are undisputed that, of the total advertising that was performed by Plaintiff, a substantial quantity of the advertising material was created by the Defendants was voluntarily provided to Plaintiff on their behalf.  Consequently, this Court is no apprised of the manner and extent to which Plaintiff considers such material to be false or misleading, particularly under circumstances in which they themselves voluntarily offered it to their customers. Indeed, while there is record evidence of the advertising created by Defendants, such evidence is bereft of necessary factual and contextual information.  This Court has not been privy to information demonstrating delineation between the advertising created by the Defendant that was offered for their personal benefit, and the aforementioned advertising that was provided for the Plaintiff, or evidence as to whether such advertising is in fact identical.  In the absence of such information, the Court feels that there exist genuine issues of material fact that preclude the immediate resolution of this matter.  Viewing the evidence in a light most favorable to Plaintiff, there exists evidence that Defendants advertised in

the Washington Metropolitan Area using the mark and trade name CARIBBEAN CRESCENT, the rights to which are owned by Plaintiff. Defendants have not made a showing that no reasonable juror could return a verdict for Plaintiff on the issue.  Consequently, Defendants' motion with respect to false advertising is denied.

   C. <u>Defendants' Motion for Summary Judgment on Plaintiff's</u> <u>Unfair Competition and Trade Name Infringement Claim under</u> <u>the Common Law</u>

   In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is obliged to show the court that "it ha[d] a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star*, 43 F.3d at 930.  Under Virginia law, it is appropriate for the Court to apply the same unfair competition test as would be applied in addressing a similar claim under the Lanham Act.[5]

   Having already determined that there exists a genuine issue of material facts that preclude summary judgment for Defendants, this Court will likewise deny summary judgment on this claim.

   D. <u>Plaintiff's Motion for Summary Judgment on their</u> <u>Cancellation of Registration Claim</u>

   Plaintiff alleges that Defendants fraudulently obtained their trademark registration of CARIBBEAN CRESCENT through

---

[5] *See People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, n. 2 ("[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law....")(quoting *Lone Star,* 43 F.3d at 930 n. 10).

making material false statements on its application with the United States Patent and Trademark Office.  As part of the registration application process, a trademark registrant must affirm, under oath, that he "believes" himself to be the owner of the mark sought to be registered and that "to the best of his knowledge and belief" no other person has the right to use the mark in commerce. 15 U.S.C. § 1051(a)(3)(A), (A)(3)(D).  A mark shall be canceled if its registration was fraudulently obtained. *See* 15 U.S.C. §§ 1064(3) and 1120. In order to prevail, Plaintiff must prove by clear and convincing evidence that Defendants "'knowingly ma[de] false, material representations of fact' and intended to deceive the Patent and Trademark Office." *See Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417 (4th Cir. 1998)(quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)).  An applicant is required to state under oath that "to the best of his knowledge and belief" no one else has the right to use the mark. § 1051(a)(1)(A).  "The oath is phrased in terms of a subjective belief, such that it is difficult [...] to prove [...] fraud so long as the affiant or declarant has an honestly held, good faith belief." 148 F.3d at 420 (quoting 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:76, p. 31–116 to 117 (4th ed. 1998)).

Under the statutory scheme of the Lanham Act, a federally registered mark becomes incontestable only if the mark has been on the on the Principal Register for five continuous years. Valid ground for cancellation of a mark registered for less than five years is any ground that would have prevented registration in the first place. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945–46 (Fed.Cir. 2000); *see also* 1 J. McCarthy, *supra*, at § 20.14. In order to have standing to petition for cancellation, the petitioner may be "any person who believes that he is or will be damaged [...]by the registration of a mark on the principal register established by this chapter." 15 U.S.C. § 1064. *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed.Cir. 1998). A belief in likely damage can be shown by establishing a direct commercial interest. *See International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (finding sufficient the petitioner's production and sale of merchandise bearing the registered mark); McCarthy, §§ 20:7, 20:46. Consequently, § 33(a) of the Lanham Act, 15 U.S.C. § 1115(a) is applicable. This section reads:

> (a) Any registration [...] of a mark
> registered on the principal
> register provided by this chapter and owned
> by a party to an action shall be admissible
> in evidence and shall be prima facie
> evidence of registrant's exclusive right to
> use the registered mark in commerce on the
> goods or services specified in the
> registration subject to any conditions or

> limitations stated therein, but shall not
> preclude an opposing party from proving any
> legal or equitable defense or defect which
> might have been asserted if such mark had
> not been registered.

Because Defendants only registered CARIBBEAN CRESCENT in 2008, it has not yet acquired incontestable status.  Therefore, he is only entitled to a rebuttable presumption of ownership.  See 15 U.S.C. §§ 1057(b) and 1115(a); *see also Brittingham*, 914 F.2d at 454-55.

It is also well established that an applicant for a registration of a trademark has a duty of candor in his communications with the PTO. *See, e.g., T.A.D. Avanti, Inc. v. Phone-Mate, Inc.*, 199 U.S.P.Q. 648, 655 (C.D.Cal. 1978); *see also Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994) (an applicant for a registration owes a "duty of candor" to the PTO); *Orient Express Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2nd Cir. 1988) (applicant has a duty of "uncompromising candor" to the PTO). Consequently, there is no presumption of validity attached to a PTO registration where pertinent information is not presented to the PTO. *T.A.D. Avanti*, 199 U.S.P.Q. at 655.

As a threshold matter, this Court finds that Plaintiff, as common law owner of the trade name CARIBBEAN CRESCENT in the Washington Metropolitan Area, has valid standing as a cancellation petitioner of Defendants' registration of the name

on the Principal Register. It is clear that registration of the trade name CARIBBEAN CRESCENT would considerably damage Plaintiff's ability to continue to do business as CARIBBEAN CRESCENT within the Washington Metropolitan Area, which would clearly affect a direct commercial interest of the Plaintiff.

At the time they filed their application with the Patent and Trademark Office, Defendants did not have exclusive or even substantially exclusive use of the trade name CARIBBEAN CRESCENT, having previously transferred their rights to the name within the Washington Metropolitan Area to Plaintiff.  Indeed, Defendants were not even entitled to use the mark and trade name at their principal place of business in Laurel, Maryland, which is also the address that appears on the Principal Register.  Nor would Defendants be entitled to use the trade name at their location in Reston, Virginia.  Defendant Rahman's claim of exclusive use is a false, material representation of fact. However, there remains the issue of whether Defendants intended to deceive the Patent and Trademark Office.

This Court believes that it was Defendant Rahman's intent to deceive the Patent and Trademark Office in the registration of the CARIBBEAN CRESCENT trademark.  Defendant Rahman's actual knowledge of and participation in the sale of business asserts between the parties, as evidenced through its operative financial documents bearing Defendant Rahman's signature, in

itself casts significant doubt on his later sworn affirmation that no one else was using or had the right to use the mark in commerce.  Defendants' substantial direct contact and extensive business dealings with Plaintiff presents strong evidence that Defendant Rahman knew that Plaintiff was entitled to use the trade name within the Washington Metropolitan Area at the time of application.  There is ample documentary evidence relating to business transactions between the parties, and it is undisputed that Defendant Rahman had actual knowledge that Plaintiff was using the name CARIBBEAN CRESCENT in commerce well before he filed his application to trademark registration.

Defendants argue that it was Defendant Rahman's good faith belief that the Sale Agreement granted only a "license" to the trade name and that, therefore, Plaintiff would be forced to relinquish use of the trade name after five years had elapsed after the 2003 Agreement was signed. (Def. Opp'n Pl. Mot. 25.) Even viewing the evidence in a manner most favorable to the Defendants, *i.e.*, that Defendant Rahman truly believed this licensing arrangement to be the case when he submitted the application, Defendant Rahman's statement that no other person had the right to use the mark in commerce would still constitute a false and misleading statement.  The Sale Agreement between the parties relating to the sale of business assets was signed in June of 2003.  Defendant applied for the CARIBBEAN CRESCENT

trademark in February of 2008, which still would have been within the five-year "license" period.   Thus, Defendant's assertion on the registration application is both patently false, as well as insufficient satisfy Defendant Rahman's duty to make a full disclosure as to all relevant facts of which it had knowledge bearing on the PTO's decision to grant the registration. *See T.A.D.*, 199 U.S.P.Q. at 656.   Consequently, setting aside the rectitude of Defendant Rahman's alleged belief, the mere fact that Defendant Rahman by his own admission asserts that he submitted the application while having held such a belief entails clear and convincing evidence of having knowingly made false, material misrepresentations as to exclusivity of use on their registration application with the Patent and Trademark Office.   Consequently, this Court will grant Plaintiff's motion for summary judgment on cancellation of registration.

    E.  <u>Plaintiff's Motion for Summary Judgment on Defendants'</u>
<u>Trademark Infringement, Trademark Counterfeiting, Unfair</u>
<u>Competition, and False Designation of Origin Counterclaim</u>
<u>under the Federal Law (the Lanham Act, 15 USC §§ 1114, 1125)</u>

Counter/Third-Party Defendant East West has moved for summary judgment on Third-Part Plaintiff CCI's counterclaim for trademark infringement, trademark counterfeiting, unfair competition, and false designation of origin under the Lanham Act based upon Counter/Third-Part Defendant East West's

"unauthorized use of CCI's CARIBBEAN CRESCENT marks outside of the Washington Metropolitan Area."  [Dkt. 86 at 23.]

In moving for summary judgment on this claim, Plaintiff asserts that because "all rights to the common law CARIBBEAN CRESCENT Mark conveyed to [Plaintiff] under the Sale Agreement in 2003," Defendants' counterclaim should be dismissed.  (Pl. Mem. in Supp. of Pl. Mot. 23.)  However, as this Court has stated previously in this Memorandum Opinion, while the Sale Agreement transferred to Plaintiff the common law rights to the CARIBBEAN CRESCENT trade name and mark within the Washington Metropolitan Area, the Sale Agreement expressly allowed the Defendants to continue to use them outside of the Washington Metropolitan Area.  Plaintiff's characterizations of the significance of the transfer of business assets are erroneous and, as such, the very basis of Plaintiff's argument in moving for summary judgment is clearly without factual merit. Consequently, Plaintiff's motion for summary judgment on Defendants' counterclaim is denied.

F. <u>Plaintiff's Motion for Summary Judgment on Defendants' Trademark Infringement, Unfair Competition, and False Designation of Origin Counterclaim under the Common Law</u>

Counter/Third-Party Defendant has also moved for summary judgment on Third-Part Plaintiff CCI's counterclaim for trademark infringement, unfair competition, and false

designation of origin under the common law.  The test is "essentially the same" as the test for trademark infringement and unfair competition pursuant to the Lanham Act.  *Lone Star*, 43 F.3d at 930 n. 10.  As this Court has stated previously, "[a]t common law, trademark ownership is acquired by actual use of the mark in a given marketplace." *Worsham Sprinkler Co.*, 419 F.Supp.2d at 867.

In moving for summary judgment on this claim, Plaintiff again rests on their assertion that because "all rights to the common law CARIBBEAN CRESCENT Mark conveyed to [Plaintiff] under the Sale Agreement in 2003," Defendants' counterclaim should be dismissed.  (Pl. Mem. in Supp. of Pl. Mot. 23.)  However, as this Court has stated previously in this Memorandum Opinion, while the Sale Agreement transferred to Plaintiff the common law rights to the CARIBBEAN CRESCENT trade name and mark within the Washington Metropolitan Area, the Sale Agreement expressly allowed the Defendants to continue to use them outside of the Washington Metropolitan Area.  Plaintiff's characterizations of the significance of the contract are erroneous and, as such, the very basis of Plaintiff's argument in moving for summary judgment is clearly without factual merit.  Consequently, Plaintiff's motion for summary judgment on Defendants' counterclaim is denied.

E. Defendants' Motion for Summary Judgment on Plaintiff's Breach of Contract Claim

    1. Choice of law

    The Court begins with the threshold choice of law issue. As a federal court exercising supplemental jurisdiction over this claim, the Court applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In Virginia, the statute of limitations is a procedural issue governed by Virginia law. *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 753 F. Supp. 2d 597, 602 (E.D.Va. 2010). Pursuant to Virginia Code § 8.01–246(2), the limitations period for breach of contract claims based on a written contract is five years. Va. Code § 8.01–246(2). However, Virginia has also enacted a borrowing statute which "limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's." *Hansen v. Stanley Martin Cos., Inc.*, 266 Va. 345, 352 (Va. 2003) (citing Va. Code § 8.01–247). "For purposes of the borrowing statute, '[t]he law governing a contract is the law relating to the validity and interpretation of the contract itself, rather than the law regarding performance and breach." *Hunter Innovations*, 753 F. Supp. 2d at 602 (citing *Fiberlink Commc'ns Corp. v. Magarity*, 24 F. App'x 178, 2001 WL 1658914, at *3 (4th Cir. 2001)). Thus,

whether East West's breach of contract claim is subject to the limitations period of Virginia or the more restrictive limitations period of another state depends on what law governs the contract.

In Virginia, it is well established that the nature, validity, and interpretation of a contract is governed by the "law of the place where made." *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (Va. 1996) (citations omitted). A contract is made "when the last act to complete it is performed." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005). However, when "a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract." *Hunter Innovations*, 753 F. Supp. 2d at 603 (citing *Erie Ins. Exch. v. Shapiro*, 248 Va. 638, 640 (Va. 1994)). Importantly, an exception exists when the contract is to be performed more or less equally among two or more states, in which case the law of the state in which the contract was made should apply. *See Roberts v. Aetna Casualty & Sur. Co.*, 687 F. Supp. 239, 241 (W.D. Va. 1988); *see also Black v. Powers*, 48 Va. App. 113, 132-33 (Va. Ct. App. 2006) (applying the law of the Virgin Islands, where the contract was made and partially performed).

Defendants argue that the District of Columbia's three-year limitations period applies to East West's breach of

contract claim.  *See* D.C. Code § 12-301(7).  Specifically, they contend that District of Columbia law governs the Commission Agreement because the contract was to be performed there.  In support of their position, Defendants point to a provision of the contract, which states that "[a]ll sales in the Washington Metro Area (for Caribbean Crescent, Inc. Jamaican Patties) will be handled through East West LLC DBA Caribbean Crescent" and that "[a] 20% commission of the net profit will be paid for all handling/storage, delivery, and sales for the Jamaican Patties." (SAC Ex. I.)  Defendants argue that this provision, coupled with the fact that East West's principal place of business is located in Washington, D.C., demonstrates that Washington, D.C. is the place of performance.  However, the Washington Metro Area includes counties in Virginia, Maryland, and West Virginia.  *See* Dep't of Labor, May 2011 Metropolitan and Nonmetropolitan Area Definitions, *available at* http://www.bls.gov/oes/current/ msa_def.htm.  Thus, contrary to Defendants' assertion, the Commission Agreement was not to be performed exclusively in Washington, D.C.  Because the contract was to be performed in multiple states (and there is no reason to believe that one predominated over the others), the choice-of-law analysis reverts back to the place where the contract was made.  East West argues that the Commission Agreement was made in Virginia - a contention that Defendants do not contest and therefore

concede. *See Kinetic Concepts, Inc. v. Convatec Inc*., No.
1:08cv918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010)
(recognizing the general principle that "a party who fails to
address an issue has conceded the issue") (collecting cases).
Accordingly, the Virginia statute of limitations applies to East
West's breach of contract claim.

### 1. Accrual Date

The next relevant inquiry is whether it is clear from
the pleadings when East West's breach of contract claim accrued.
Under Virginia law, the statute of limitations applicable to a
breach of contract action is five years and runs from the date
"when the breach of contract occurs." Va.Code Ann. § 8.01-246(2)
(Michie 2000); *Id*. § 8.01-230.

Defendants argue that the claim accrued in February
2004.  Plaintiff have previously asserted and relied on the fact
that they "discovered that Defendants had started a new business
within the Washington Metropolitan Area that directly completed"
with their business "sometime in 2003 or 2004," and told
Defendant Rahman that this "was a violation of their Agreement."
Although Plaintiff's statement does not provide a precise date
by which to measure the date of breach, it is sufficient in this
case to assume that the breach took place at some point in
either 2003 or 2004.  Viewing the evidence in a light most
favorable to the Plaintiff, and even assuming that the breach

took place at the latest possible point within that stated range
of time, because Plaintiff did not file suit until late 2011,
the result is that Plaintiff's breach of contract claim falls
outside of the applicable five-year statute of limitations.
Consequently, Plaintiff's breach of contract claim is barred by
the statute of limitations and summary judgment is granted for
Defendants.

## IV.   Conclusion

For these reasons, the Court will rule on the parties'
Motions as follows:

(1)    Plaintiff's Motion for Summary Judgment on Plaintiff's
Claim for Trademark Infringement, Use of False Designations of
Origin, and False Representations in Commerce in Violation of
Federal Law (the Lanham Act, 15 USC § 1125(A)) is denied;

(2)    Plaintiff's Motion for Summary Judgment on Plaintiff's
Claim for Trademark Infringement in Violation of the Common
Law is denied;

(3)    Defendants' Motion for Summary Judgment on Plaintiff's
Claim for Trademark Infringement, Use of False Designations of
Origin, and False Representations in Commerce in Violation of
Federal Law (the Lanham Act, 15 USC § 1125(A)) is denied;

(4)    Defendants' Motion for Summary Judgment on Plaintiff's
Claim for Trademark Infringement in Violation of the Common
Law is denied;

(5)     Defendants' Motion for Summary Judgment on Plaintiff's Unfair Competition, Passing Off, False Advertising, Trade Name Infringement, and False Designation of Origin Claim in Violation of Federal Law (the Lanham Act, 15 U.S.C. § 1125(A)) is denied;

(6)     Defendants' Motion for Summary Judgment on Plaintiff's Unfair Competition and Trade Name Infringement Claim in Violation of the Common Law is denied;

(7)     Plaintiff's Motion for Summary Judgment on Plaintiff's Cancellation of Registration Claim is granted;

(8)     Plaintiff's Motion for Summary Judgment on Defendant's Trademark Infringement, Trademark Counterfeiting, Unfair Competition, and False Designation of Origin Counterclaim in Violation of Federal Law (the Lanham Act, 15 USC §§ 1114, 1125) is denied;

(9)     Plaintiff's Motion for Summary Judgment on Defendant's Trademark Infringement, Unfair Competition, and False Designation of Origin Counterclaim in Violation of the Common Law is denied; and

(10)    Defendants' Motion for Summary Judgment on Plaintiff's Breach of Contract Claim is granted.

An appropriate Order will issue.


                                    _____
                                                /s/
September 13, 2012                      James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE