IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF VIRGINIA

                            Alexandria Division

EAST WEST, LLC d/b/a                    )
CARIBBEAN CRESCENT,                     )
                                        )
     Plaintiff,                         )
                                        )
          v.                            ) 1:11cv1380 (JCC/TCB)
                                        )
SHAH RAHMAN,                            )
                                        )
and                                     )
                                        )
CARIBBEAN CRESCENT, INC.                )
                                        )
     Defendants.                        )
                                        )
CARIBBEAN CRESCENT, INC.,               )
                                        )
     Counterclaimant and Third-Party Plaintiff, )
                                        )
          v.                            )
                                        )
EAST WEST, LLC, d/b/a                   )
CARIBBEAN CRESCENT,                     )
                                        )
     Counter-Defendant,                 )
                                        )
and                                     )
                                        )
NAEEM ZAI,                              )
                                        )
and                                     )
                                        )
MOHAMMED SADIQ,                         )
                                        )
     Third-Party Defendants.            )
                                        )
                                        )
                                        )
                                        )
                                        )
                                        )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion to Exclude the Testimony of Plaintiff's Damages Expert Michael A. Einhorn, Ph.D [Dkt. 119] (the "Motion"). For the following reasons, Defendants' Motion is denied.

**I. Background**

A. Factual Background

Plaintiff East West, LLC ("East West") sells food products including Jamaican and south Asian spices and halal meat and fish in the Washington, D.C. metropolitan area and surrounding communities. (Supplemental Amended Complaint ("SAC") [Dkt. 59] ¶ 2.) On June 11, 2003, East West and Third Party Defendants Naeem Zai and Mohammad Sadiq, who are East West's President and Vice President, respectively, (collectively, the "Buyers") entered into an "Agreement for Sale of Inventory/Assets" (the "Sale Agreement") with Defendants in which they agreed to purchase the business assets known as Caribbean Crescent. (SAC ¶ 13; Ex. A ("Sale Agreement") at 1.) Defendants agreed to deliver to the Buyers all rights, title, and interest in the business assets known as Caribbean Crescent including the common law trademark CARIBBEAN CRESCENT ("the CARIBBEAN CRESCENT Mark" or "the Mark") and the trade name Caribbean Crescent. (SAC ¶¶ 17-18, 21; Sale Agreement § 1.)

The Sale Agreement contained a non-compete provision (the "Non-Compete Agreement"), in which Defendants agreed not to compete with the business being sold to the Buyers for a period of five years and within a five mile radius of the Washington Metropolitan Area. (Sale Agreement § 21.) Defendants were entitled to "use [the] Carribean Crescent [as opposed to Caribbean Crescent] trade name," and to "continue [to] trade and market products and services as Carribean Crescent [as opposed to Caribbean Crescent] outside the Washington Metropolitan Area." (*Id.*)

On June 17, 2003, the parties closed on the Sale Agreement. (SAC ¶ 34.) The Buyers purchased the business assets known as Caribbean Crescent as well as Defendants' remaining inventory of goods. (SAC ¶¶ 31, 36.) The Buyers paid $225,918 and executed a promissory note in the amount of $215,918 in furtherance of the Sale Agreement. (SAC ¶ 40; Settlement Agreement.) The Buyers satisfied the amount due under the promissory note over a period of approximately two and a half years. (SAC ¶ 47.)

The parties executed an Articles of Sale and Transfer, also on June 17, 2003, in which CCI transferred all of the assets of Caribbean Crescent, including the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark to East West. (SAC ¶ 44; Ex. D.) That same day, the parties entered into a Financing Statement in which CCI was the Secured Party and Buyers were the

Debtor, and which covered all "Goodwill, the tradename 'CARRIBEAN CRESCENT' [sic] and all derivatives thereof; customer lists; and telephone numbers." (SAC ¶ 45; Ex. E.) The Buyers thereupon began using the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark, and East West began doing business as Caribbean Crescent. (SAC ¶¶ 48-50.)

On February 23, 2004, East West and CCI entered into a Commission Agreement, which provided that East West would handle all sales of Defendants' Jamaican patties product in the Washington Metro Area. (SAC ¶¶ 55-56; Ex. I.) East West was entitled to a twenty percent commission for such sales. (Id.) The Commission Agreement also established a five percent commission to be paid by East West to CCI for all sales of East West's products made by Rahman. (SAC ¶ 57.) East West alleges that Defendants have never paid any commissions on any of the sales made pursuant to the Commission Agreement. (SAC ¶ 59.)

Defendants allegedly violated the Non-Compete Agreement and the sale and assignment of the trade name Caribbean Crescent by competing against East West and using the trade name Caribbean Crescent within a five-mile radius of the Washington Metro Area "sometime between June 17, 2003 and June 16, 2008." (SAC ¶¶ 60, 62.) Defendants also allegedly began using the CARIBBEAN CRESCENT Mark "sometime shortly after" the sale and assignment of the Mark to East West. (SAC ¶ 64.) East West alleges, on

information and belief, that a number of the products sold by Defendants under the trade name Caribbean Crescent and bearing the CARIBBEAN CRESCENT Mark were first introduced into the market in June or July of 2011. (SAC ¶¶ 61, 63.)

On or about February 20, 2008, Defendants allegedly filed a trademark application with the United States Patent and Trademark Office for the CARIBBEAN CRESCENT Mark, despite having sold and assigned the Mark to East West over four years earlier. (SAC ¶¶ 65-66.) Defendants allegedly made various fraudulent statements regarding their purported ownership and use of the CARIBBEAN CRESCENT Mark in filing and prosecuting the trademark application. (SAC ¶¶ 66-70.) The PTO ultimately accepted the trademark application and registered the CARIBBEAN CRESCENT Mark. (SAC ¶ 79.)

On or about October 30, 2008, Rahman sent a facsimile to East West claiming ownership of the CARIBBEAN CRESCENT Mark. (SAC ¶ 71.) Rahman sent two subsequent facsimiles to East West in which he expressed a desire to clear up their misunderstandings. (SAC ¶¶ 72-73; Exs. N, O.) On December 15, 2008, East West sent a letter by counsel to Rahman asserting that it had purchased all of CCI's assets, including the trade name Caribbean Crescent. (SAC ¶ 74; Ex. P.)

In January 2009, Rahman advised Zai that Rahman's father, who was terminally ill with cancer, wished to meet with him to

help resolve the problems between the parties. (SAC ¶ 75.) In February 2009, Sadiq and Zai visited Rahman's father. (SAC ¶ 77.) Rahman was also present. (*Id.*) At that time, Rahman's father allegedly stated that Rahman had not honored the agreements between the parties but that he would from that point on. (*Id.*) Rahman himself allegedly agreed to honor the parties' agreements as well. (*Id.*)

In February or March of 2011, Defendants hired a former employee of East West named Ishmael Amin. (SAC ¶ 82.) According to East West, Amin had knowledge of its customers, its business methods, and "other 'company sensitive' information." (*Id.*) Much of this information was valuable, not known outside of its business, was protected, and would be difficult, if not impossible, for Defendants to acquire or duplicate. (SAC ¶ 83.) Defendants have allegedly obtained proprietary information and knowledge of East West's business relationships through Amin. (SAC ¶¶ 85, 88.) East West alleges that Defendants have begun to interfere with East West's business relationships and to use its proprietary information. (SAC ¶¶ 86-87.)

In June or July of 2011, Rahman approached Zai and Sadiq with new products displaying the trade name Caribbean Crescent and the CARIBBEAN CRESCENT Mark and asked if East West would sell those products in the Washington Metropolitan Area. (SAC ¶ 80.) When Zai and Sadiq refused, Rahman informed them that he

would proceed to sell the products using a different distributor. (*Id.*) East West asserts that this was the point in time at which it "lost all hope" that Defendants would honor the parties' agreements despite the assurances previously made by Rahman. (*Id.*)

B. Procedural Background

On March 19, 2012, the parties to this action filed a Joint Discovery Plan. [Dkt. 25] The deadline for serving all initial expert reports was set on May 17. All rebuttal reports were to be served by June 13. [Dkt. 26.] On April 4, Magistrate Judge Theresa Buchanan approved the parties' Joint Discovery Plan in this case. [Dkt. 36.] On June 5, Defendant filed a Motion to Extend Discovery Deadlines to File Expert Rebuttal Report. [Dkt. 71] On June 6, Defendants filed their Opposition to Plaintiff's Motion for Extension of Time. [Dkt. 75.] On June 8, Magistrate Judge Buchanan granted Defendants Motion, setting the new deadline as June 27. Plaintiff was allowed to depose Defendants' expert until July 11. [Dkt. 83.]

On June 25, the parties entered a Joint Motion to Continue the Remaining Dates of Scheduling Order. [Dkt. 94.] On June 26, Magistrate Judge Buchanan entered an order granting the parties' Joint Motion to Continue. All dispositive and *Daubert* motions were to be filed by August 1, with responsive briefs due by August 15 and rebuttal briefs due by August 27. All Rule

7

26(a)(3) pretrial disclosures were to be filed and served by September 4, with objections due by September 7. [Dkt. 96.] Magistrate Judge Buchanan also cautioned that there would be no more extensions of time. [*Id.*]

Dr. Einhorn's first expert report is dated May 17, 2012 ("Dr. Einhorn's initial report"). Dr. Einhorn filed a supplemental report dated July 27, 2012 ("Dr. Einhorn's supplemental report"). On August 1, Defendants filed a Motion to Exclude the Testimony of Plaintiff's Damages Expert Michael Einhorn, Ph.D. [Dkt. 119.] On the same day, Defendants filed a Memorandum in Support of their Motion to Exclude the Testimony of Plaintiff's Damages Expert Michael Einhorn, Ph.D. [Dkt. 111.] They also filed a Motion to Seal Exhibits to Seal Exhibits to Declaration of Katie Bukrinsky in Support of Defendants' Motion to Exclude the Testimony of Plaintiff's Damages Expert Michael Einhorn, Ph.D. [Dkt. 109.] On August 15, Plaintiff filed their Opposition to Defendants' Motion to Exclude. [Dkt. 137.]

Defendants argue that Dr. Einhorn's lost profits analysis will not assist the jury and therefore should be excluded as an improper expert opinion. Defendants offer four reasons to justify their argument. First, Defendants believe it is improper that Dr. Einhorn's calculations of revenues rely on the assessment of Plaintiff's counsel as to which transactions constitute infringing sales. As a consequence, Defendants

8

assert that his lost profits analysis, which relies upon his calculations of revenue, is erroneous and based upon supposition. Second, Defendants assert that "Dr. Einhorn applies an arbitrary profit rate and commission rate in building his lost profits analysis." (Def. Mot. 2.) Third, Defendants contest the inclusion in Dr. Einhorn's damages analysis of Defendants' sales outside of the Washington Metropolitan Area. Defendants believe that such sales are "expressly and indisputably permitted by the parties' 2003 Agreement." (*Id.*) Fourth, Plaintiff asserts that Dr. Einhorn's lost profits analysis incorrectly includes periods barred by acquiescence, laches, and the applicable statute of limitations in which damages are said to have accrued. (*Id.*)

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence, which was amended effective December 1, 2000, to reflect the Supreme Court's rulings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (U.S. 1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (U.S. 1999), now provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

9

> testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Evid. 702. Pursuant to their role as gatekeepers, district court judges must act to "'ensure that any and all scientific testimony [. . .] is not only relevant, but reliable.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert*, 509 U.S. at 588). Expert testimony, in order to be reliable, "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)(citing *Daubert*, 509 U.S. at 590, 592-93) (emphasis in original). "Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability." *Id.* (citing *Daubert*, 509 U.S. at 593-94). Further, an expert must not only have reliable methodology, but must properly apply that methodology to the facts. *See ePlus, Inc. v. Lawson Software, Inc.*, 764 F.Supp.2d 807, 813 (E.D.Va. 2011)("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

data only by the ipse dixit of the expert")(quoting *Kumho Tire Co*, 526 U.S. at 157)).

The primary goal of this inquiry is to ensure that the proffered testimony is reliable, in the sense that it is based on scientific knowledge, and relevant, in the sense that it will be of assistance to the fact-finder. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir.2000). Stated differently, the gatekeeping requirement is meant "to ensure that the expert witness in question in the courtroom employs the same level of intellectual vigor that characterizes the practice of an expert in the relevant field." *Id*. at 815-16 (citing *Kumho Tire Co.*, 526 U.S. at 152). When making this determination, the trial judge must have considerable leeway in both his reliability determination and the means he uses to conduct it. *Kumho Tire Co.*, 526 U.S. at 152.

In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 119 S.Ct. at 1175-76.1. The court, however, should be conscious of two guiding, and sometimes competing, principles. On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert

evidence. See *Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir.1996). And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. *Id*.  As with all other admissible evidence, expert testimony is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. However, the court must also recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both powerful and quite misleading." *Id*. at 595 (internal quotations omitted). And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded. *See United States v. Dorsey*, 45 F.3d 809, 815-16 (4th Cir. 1995)

As an initial matter, as this Court stated in its recent Memorandum Opinion, by expressly allowing Defendants to use the name CARIBBEAN CRESCENT outside of the Washington Metropolitan Area, Plaintiff contracted away their ability to assert the primacy of their common law rights to the trade name, as based upon the transfer of business assets, in any area except the Washington Metropolitan Area during the pendency of the contract.  [Dkt. 180.]  Dr. Einhorn's initial report does not sufficiently distinguish between sales made inside and outside

12

of the Washington Metropolitan Area.  Consequently, the applicability of Dr. Einhorn's initial report will be controlled by the Court's holding that the Plaintiff's ability to assert trademark infringement must be limited to infringement that took place within the Washington Metropolitan Area during the pendency of the contract.  Additionally, it bears mentioning that Dr. Einhorn's July 27, 2012 supplemental report does in fact distinguish between transactions that took place inside and outside of the Washington Metropolitan Area, ameliorating any such defect that might result from the failure to include such delineation in the initial report.

    This Court has review Dr. Einhorn's report and finds that, when considered in conjunction with Dr. Einhorn's Supplemental Report, it represents expert testimony sufficient to meet the requirements of Rule 702 and *Daubert*.  Dr. Einhorn's report was timely filed and supplemented, and also represents reliable methodology that is sufficiently reliable to be admissible under Rule 702 when considered in conjunction with Dr. Einhorn's supplemental report.  Lost profits and damages are not easy to quantify, particularly when one attempts to do so for the opposition in a trademark infringement case.  Such calculations require an individual attempting to calculate such losses to make a few assumptions in the absence of substantive evidence or information.  This does not render all such calculations

unreliable, and the admissibility test does not turn on whether the opinion has the best foundation or whether it is supported by the very best methodology, or unassailable research. *In Re TMI Litig.*, 193 F.3d 613, 665 (3d Cir.1999). In reality, the test is whether the "particular opinion is based on valid reasoning and reliable methodology." *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir.1997). This Court believes that the jury is capable of appropriately evaluating Dr. Einhorn's general methodological principles upon cross-examination and determining the weight that they should be given. Additionally, the Court finds that the Defendants are amply capable of refuting Dr. Einhorn's reports and methodology at trial to the extent that it is disputed. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999) (in making a determination on the reliability of expert testimony, "the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof")(internal citations omitted).

It bears reiterating that it is Dr. Einhorn's supplemental report that renders his initial report sufficient for the purpose for which it has been proffered, and subjecting the

initial report standing alone to a Motion to Exclude without consideration of the supplemental report would be improper. This Court finds that Dr. Einhorn's testimony, considered in conjunction with Plaintiff's supplementation, is sufficiently reliable. In this case, its alleged shortcomings go to the weight it should be given rather than admissibility. *See Reynolds v. Crown Equip. Corp.*, 5:07CV00018, 2008 WL 2465032, at *15-16 (W.D.Va.2008)(court found experts' testimony sufficiently reliable, noting that inconsistencies would be subject to vigorous cross-examination and would go to the weight given experts' testimony, not admissibility).

**IV. Conclusion**

For the forgoing reasons, the Court will deny Defendants' Motion to Exclude the Testimony of Plaintiff's Damages Expert Michael A. Einhorn, Ph.D.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| September 17, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |